# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

_____

### No. 14-1641

_____

## UNITED STATES,
**Appellee**

**v.**

## DANIEL E. CARPENTER,
**Defendant-Appellant**

_____

**On Appeal from an Opinion and Order of the United States District Court for the District of Massachusetts**

_____

## BRIEF OF DEFENDANT-APPELLANT DANIEL E. CARPENTER

_____

Kimberly Homan
20 Park Plaza, Suite 1000
Boston, Massachusetts 02116
(617) 227-8616 (Telephone)
(617) 338-9538 (Fax)
homanlaw@aol.com

# TABLE OF CONTENTS

STATEMENT OF SUBJECT MATTER
    AND APPELLATE JURISDICTION . . . . . . . . . . . . . . . . . . . . . .     1

STATEMENT OF ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . .     1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     2

    Procedural Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     2

    Relevant Trial Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     6

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     10

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     16

I.    THE DISTRICT COURT LACKED SUBJECT-MATTER
    JURISDICTION TO ENTER THE FORFEITURE ORDER . . . .     17

II.    CARPENTER DID NOT "ACQUIRE" THE MONEY
    ORDERED TO BE FORFEITED AS REQUIRED UNDER
    §981(a)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     20

    A.    The Statutory Framework . . . . . . . . . . . . . . . . . . . . . . . . .     21

    B.    Carpenter Did Not "Acquire" the Monies He Has
        Been Ordered to Forfeit . . . . . . . . . . . . . . . . . . . . . . . . . . .     26

    C.    At Minimum, the Statute is Grievously Ambiguous,
        and the Rule of Lenity Should be Applied . . . . . . . . . . . .     32

III..    THE $14 MILLION FORFEITURE ORDER VIOLATES
    THE EXCESSIVE FINES  CLAUSE OF THE EIGHTH
    AMENDMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     33

IV.  THE AMOUNT OF MONEY THAT CARPENTER
     "ACQUIRED" AS THE RESULT OF THE OFFENSES
     OF CONVICTION WAS REQUIRED TO BE FOUND BY
     A JURY RATHER THAN BEING THE SUBJECT
     OF JUDICIAL FACTFINDING . . . . . . . . . . . . . . . . . . . . . . . . . . .    37

V.   EVEN IF CARPENTER COULD BE FOUND TO HAVE
     "ACQUIRED" THE EXCHANGORS' FUNDS FOR
     PURPOSES OF APPLYING §981(a)(2)(B), THE
     FORFEITURE AMOUNT SHOULD BE REDUCED BY
     THE AMOUNT OF MONEY RETURNED TO THE
     EXCHANGORS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    46

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    48

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . .    49

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    50

ADDENDUM

# TABLE OF AUTHORITIES

## Cases

*Alleyne v. United States*, 570 U.S. 99 (2013) . . . . . . . . . . . . . . . . . . . . . . 14, 15, 39, 41, 42, 43, 46

*Austin v. United States*, 509 U.S. 602 (1993) . . . . . . . . . . . . . . . . . . . . . .   33

*Apprendi v. New Jersey*, 530 U.S. 466 (2000) . . . . . . . . . . . . . . . . . . . . . . 14, 15, 37, 39, 41, 42, 43, 46

*Blakely v. Washington*, 542 U.S. 296 (2004) . . . . . . . . . . . . . . . . . . . . . . 14, 38, 45

*Browning-Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   33

*Cabana v. Bullock*, 474 U.S. 376 (1986) . . . . . . . . . . . . . . . . . . . . . . . . .   43

*Cunningham v. Scibana*, 259 F.3d 303 (4th Cir. 2001) . . . . . . . . . . . . .   24

*Dean v. United States*, 556 U.S. 568 (2009) . . . . . . . . . . . . . . . . . . . . . .   23

*Helvering v. San Joaquin Fruit & Inv. Co.*, 297 U.S. 496 (1936) . . . . .   25

*Hernandez-Miranda v. Empresas Diaz Masso, Inc.*, 651 F.3d 167 (1st Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

*Hirt v. Equitable Ret. Plan*, 533 F.3d 102 (2d Cir. 2008) . . . . . . . . . . .   23-24

*Honeycutt v. United States*, 137 S.Ct. 1626 (2017) . . . . . . . . . . . . . . . .   30, 31

*Hurst v. Florida*, 136 S.Ct. 616 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . .   43

*In re Hart*, 328 F.3d 45, 49 (1st Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . .   23

iii

*Kasten v. Saint-Gobain Performance Plastics Corp.*,
  563 U.S. 1 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     25

*Ladner v. United States*, 358 U.S. 169 (1958) . . . . . . . . . . . . . . . . . . .     32

*Libretti v. United States*, 516 U.S. 29 (1995) . . . . . . . . . . . . . . . . . . . . . 15, 38, 41,
                                                                            42,43 44

*McMillan v. Pennsylvania*, 477 U.S. 79 (1986) . . . . . . . . . . . . . . . . . . .     42, 44

*Padilla v. Kentucky*,  559 U.S. 356 (2010) . . . . . . . . . . . . . . . . . . . . . . .     43

*Persinger v. Islamic Republic of Iran*, 729 F.2d 835 (D.C. Cir. 1984) . .     24

*Ring v. Arizona*, 536 U.S. 584 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . .     41

*Russello v. United States*, 464 U.S. 16 (1983) . . . . . . . . . . . . . . . . . . . .     23, 24

*S.E.C. v. McCarthy*, 322 F.3d 650 (9th Cir. 2003) . . . . . . . . . . . . . . . . .     24

*Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004) . . . . . . . . . . . . . . . . . . .     23

*Southern Union Co. v. United States*, 567 U.S. 343 (2012) . . . . . . . . . . . 14, 15, 37,
                                                                            38, 39, 40,
                                                                            41, 42, 43,
                                                                            44, 45, 46

*Spaziano v. Florida*, 468 U.S. 447 (1984) . . . . . . . . . . . . . . . . . . . . . . .     42, 43

*Timbs v. Indiana*, 139 S.Ct. 682 (2019) . . . . . . . . . . . . . . . . . . . . . . . . .     33

*United States v. Bajakajian*, 524 U.S. 321 (1998) . . . . . . . . . . . . . . . . .     33, 34

*United States v. Beras*, 183 F.3d 22 (1st Cir. 1999) . . . . . . . . . . . . . . . .     36

*United States v. Booker,* 543 U.S. 220 (2005) . . . . . . . . . . . . . . . . . . . . .     44

iv

*United States v. Bowen*, 127 F.3d 9 (1st Cir. 1997) . . . . . . . . . . . . . . . .    32

*United States v. Brooks*, 145 F.3d 446 (1st Cir. 1998) . . . . . . . . . . . . .    18

*United States v. Carpenter*, 405 F.Supp.2d 85 (D.Mass. 2005) . . . . . . . .    2

*United States v. Carpenter*, 494 F.3d 13 (1st Cir. 2007) . . . . . . . . . . . .    2

*United States v. Carpenter*, 808 F.Supp.2d 366 (D.Mass. 2011) . . . . . . .    3

*United States v. Carpenter*, 736 F.3d 619 (1st Cir. 2013). . . . . . . . . . . .    3, 6, 9

*United States v. Carpenter*, 781 F.3d 599 (1st Cir. 2015) . . . . . . . . . . .    6

*United States v. Contorinis*, 692 F.3d 136 (1st Cir. 2012) . . . . . . . . . . .    27, 28, 29

*United States v. Cox*, 851 F.3d 113 (1st Cir. 2017) . . . . . . . . . . . . . . . .    21

*United States v. Day*, 700 F.3d 713 (4th Cir. 2012) . . . . . . . . . . . . . . .    44, 45

*United States v. Distasio*, 820 F.2d 20 (1st Cir.1987) . . . . . . . . . . . . . .    18

*United States v. Ferrario-Pozzi*, 368 F.3d 5 (1st Cir. 2004) . . . . . . . . . .    19, 26

*United States v. Fruchter*, 411 F.3d 377 (2d Cir. 2005) . . . . . . . . . . . . .    45

*United States v. George*, 886 F.3d 31 (1st Cir. 2018) . . . . . . . . . . . . . . .    20, 21, 22, 23

*United States v. George*, 841 F.3d 55 (1st Cir. 2016) . . . . . . . . . . . . . .    10, 17, 18, 19

*United States v. Ginsburg*, 773 F.2d 798 (7th Cir.1985)(en banc) . . . . . .    30

*United States v. Hall*, 434 F.3d 42 (1st Cir. 2006) . . . . . . . . . . . . . . . . .    29

*United States v. Heldeman*, 402 F.3d 220 (1st Cir. 2005) . . . . . . . . . . . .33, 34, 35, 36

*United States v. Hollnagel*, 2013 WL 5348317 (N.D.Ill. Sept. 24, 2013).    47

*United States v. Innarelli*, 524 F.3d 286 (1st Cir. 2008) . . . . . . . . . . . . .    26

*United States v. Joseph*, 743 F.3d 1350 (11th Cir. 2014) . . . . . . . . . . .    26

*United States v. Levesque*, 546 F.3d 78 (1st Cir. 2008) . . . . . . . . . . . . . .    34

*United States v. Maldonado-Rios*, 790 F.3d 62 (1st Cir. 2015) . . . . . . . . .    18

*United States v. McLaughlin*, 565 Fed. App'x 470 (6th Cir. 2014) . . . . . .    31

*United States v. Milkiewicz*, 470 F.3d 390 (1st Cir. 2006) . . . . . . . . . . . . .    45

*United States v. Munyenyezi*, 781 F.3d 532 (1st Cir. 2015) . . . . . . . . . . .    41

*United States v. Naphaeng*, 906 F.3d 173 (1st Cir. 2018) . . . . . . . . . . .    19

*United States v. Neto*, 2017 WL 5209427 (1st Cir. Jan. 6, 2007) . . . . . . .    36

*United States v. Newman*, 659 F.3d 1235 (9th Cir. 2011) . . . . . . . . . . . .    40

*United States v. Nippon Paper Indus. Co.*, 109 F.3d 1 (1st Cir. 1997) . . .    25

*United States v. Ortiz-Cintron*, 461 F.3d 78 (1st Cir. 2006) . . . . . . . . . . .    43

*United States v. Perry*, 2014 WL 7499372 (E.D.Va. Dec. 22, 2014),
    *aff'd* 659 Fed. App'x (4th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . .    31

*United States v. Peters*, 257 F.R.D. 377 (W.D.N.Y. 2009),
    *aff'd* 732 F.3d 93, 102-04 (2d Cir. 2013) . . . . . . . . . . . . . . . . . . . . .    31

*United States v. Pfaff*, 619 F.3d 172, 174-75 (2d Cir. 2010) . . . . . . . . . . .    37

*United States v. Phillips*, 704 F.3d 754 (9th Cir. 2012) . . . . . . . . . . . . . .    43, 44

*United States v. Rouhani*, 598 F. App'x 626 (11th Cir. 2015) . . . . . . . . . .    28

*United States v. Saccoccia*, 564 F.3d 502 (1st Cir. 2009) . . . . . . . . . . . . .    44

*United States v. Sigillito*, 759 F.3d 913 (8th Cir.  2104) . . . . . . . . . . . . . .    43, 44

*United States v. Simpson*, 741 F.3d 539 (5th Cir. 2014) . . . . . . . . . . . . . .    43, 44

*United States v. Torres*, 703 F.3d 194 (2d Cir. 2012) . . . . . . . . . . . . . . .    28

*United States v. Walker-Couvertier*, 860 F.3d 1 (1st Cir. 2017) . . . . . . . .    41

*United States v. Webber*, 536 F.3d 584 (7th Cir. 2008) . . . . . . . . . . . . . .    26

## Constitutional Provisions

Sixth Amendment, United States Constitution . . . . . . . . . . . . . . . . . . . . . 15, 38, 40,
42, 43, 47

Eighth Amendment, United States Constitution . . . . . . . . . . . . . . . . . . . . . 12,16, 33,
34,37

## Statutes and Rules

18 U.S.C. §981(a)(1)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    10, 21

18 U.S.C. §981(a)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    *passim*

18 U.S.C. §981(a)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    *passim*

18 U.S.C. §983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    25

18 U.S.C. §3571(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    36

 18 U.S.C. §3571(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    36

21 U.S.C. §853 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    30

28 U.S.C. §2461 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    40

42 U.S.C. §6928(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    46

**<u>Other Authorities</u>**

2A Norman J. Singer, Statutes and Statutory Construction
     §46:06 (6th ed. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    24

dictionary.com, available at
     https://www.dictionary.com/browse/acquire . . . . . . . . . . . . . . .    25

Merriam-Webster Dictionary, available at
     https://www.merriam-webster.com/dictionary/acquire . . . . . . . .    25

Oxford Living Dictionaries, available at
     https://en.oxforddictionaries.com/definition/acquire . . . . . . . . . .    25

## STATEMENT REGARDING SUBJECT MATTER
## AND APPELLATE JURISDICTION

Judgment entered in this criminal case in the district court on March 4, 2014.

Add:1.[1] Carpenter's notice of appeal from that judgment was filed on March 17,

2014. App:39. This appeal arises from an Opinion and Order as to forfeiture entered

by the district court on May 23, 2014. Add:9. Appellant Carpenter filed a timely

notice of appeal on June 5, 2014. App:41. Carpenter contends herein that the district

court lacked subject-matter jurisdiction to enter the forfeiture order. This Court has

jurisdiction under 28 U.S.C. §1291.

## STATEMENT OF ISSUES PRESENTED

1. Whether the district court lacked subject-matter jurisdiction to enter the

challenged forfeiture order.

2. Whether Carpenter "acquired" $14,053,715.52 "through the illegal

transactions resulting in the forfeiture" so as to make that amount properly subject to

forfeiture as "proceeds" under 18 U.S.C. §981(a)(2)(B).

3. Whether the amount of the forfeiture was grossly disproportionate in

violation of the Excessive Fines Clause of the Eighth Amendment to the United

---

[1] Material contained in the Addendum to the Brief is cited as "Add:___."
Material contained in the Appendix is cited in the Brief as "App:___." Material
contained in the separate Sealed Appendix is cited as "SApp." "Doc.___" designates
the document referenced by that number on the district court's docket.

States Constitution.

4.  Whether the imposition of a $14,053,715.52 forfeiture order based on a judge-made finding as to the amount that Carpenter "acquired through the illegal transactions resulting in the forfeiture" violated Carpenter's right to a jury trial on that issue under the Sixth Amendment to the United States Constitution.

5,  Whether the district court erred in failing to reduce the forfeiture amount by the amount by the amount of money returned to the exchangors.

## STATEMENT OF THE CASE

### Procedural Background.

Daniel Carpenter was indicted in February, 2004, on 19 counts of mail and wire fraud. App:48. The case was originally tried in 2005. Carpenter was convicted by a jury on all counts, but the district court granted Carpenter's motion for a new trial based on its conclusion that improprieties in the government's closing arguments had tainted the verdict. *See United States v. Carpenter*, 405 F.Supp.2d 85, 101-03 (D.Mass. 2005). The government appealed, and this Court upheld the district court. *See United States v. Carpenter*, 494 F.3d 13, 29 (1st Cir. 2007).

The case was tried again in 2008, and Carpenter was again convicted on all counts. After trial, Carpenter filed a motion for a new trial, which the district court again granted based upon improprieties in the government's closing arguments.

2

*United States v. Carpenter*, 808 F.Supp.2d 366, 380-86 (D.Mass. 2011). This time, this Court reversed. *United States v. Carpenter*, 736 F.3d 619 (1st Cir. 2013).

On February 24, 2014, the government filed a motion for an order of forfeiture, contending that it was entitled to the forfeiture of $14,053,715.52 in proceeds under 18 U.S.C. §981(a)(2)(A). App:1922. On February 26, 2014, Carpenter was sentenced to a term of 36 months. Add:3.[2] The district court addressed, but did not decide, the issue of forfeiture at sentencing. The court questioned the government's theory that "anything that was part and parcel of the fraud" was subject to forfeiture "the moment it came into his hands," finding it "odd" that forfeiture should extend to property not retained by the defendant. App:1950-51. In response to the court's question whether it made a difference whose proceeds the monies were, *i.e.*, whether they were Carpenter's or BPETCO's, the government analogized the circumstances to that involving drug organizations and traceable proceeds, arguing that the monies that went into BPETCO's account were forfeitable as traceable proceeds of Carpenter's unlawful activities. App:1958.[3]

Carpenter contended that the applicable definition of "proceeds" was found in

---

[2] Carpenter has now served that sentence.

[3] As addressed in Section II, *infra*, the concept of "traceable proceeds" is more limited where, as here, the definition of "proceeds" in §981(a)(2)(B) applies.

3

§981(a)(2)(B), and not §981(a)(2)(A), as the government contended. App:1952.

Carpenter further argued that no forfeiture was appropriate because the exchangors'

money never went to him but instead to BPETCO's account where it was lost in

trading conducted in the effort to produce the rate of return that the exchangors had

been promised. App:1952-53, 1956-57. There was, in sum, he argued, no profit to be

forfeited. App:1953-55. Carpenter further contended that since there was no gain, a

forfeiture in the amount requested by the government would, under the unusual

circumstances of this case,  constitute a violation of the Eighth Amendment's

Excessive Fines Clause. App:1954.    After argument, the court pronounced itself

unconvinced by either Carpenter or the government, stating that it had "doubts as to

whether . . . in this circumstance there are proceeds that are forfeitable within the

statutory meaning" and questioned whether forfeiture was available where the monies

went to a legal entity rather than to the defendant. App:1959. With the agreement of

the parties, the court entered judgment, stating, as to forfeiture, that "[i]f there are any

proceeds, they are to be forfeited" and that the court would hold a hearing on the

issue. Add:7; App:1960-62.

Thereafter, the parties submitted further memoranda directed to the forfeiture

issue. The government maintained its position that §981(a)(2)(A) applied to this case

and that the entire $14 million that BPETCO obtained from the affected exchangors

4

was traceable proceeds and, as such, forfeitable. App:2032. In response, Carpenter argued that this case fell within §981(a)(2)(B), that the monies went to BPETCO and not to him, that Carpenter had not "acquired" any profits forfeitable under §981(a)(2)(B), and that forfeiture in the amount of either $14 million would, under the circumstances of this case, violate the Eighth Amendment and deprive Carpenter of his livelihood. App:2042; *see also* App:2063, 2087.

Despite having said that it would hold a further hearing on the forfeiture issue, the district court did not do so. On May 23, 2014, the court entered the order which is the subject of this appeal, setting the amount of forfeiture at $14,053,715.52. Add:9-13. The court concluded that §981(a)(2)(B)'s definition of proceeds applied, Add:10-11, and that Carpenter had acquired the funds given to BPETCO by the affected exchangors as they were under his control:

> It is clear in this case that the defendant exercised control of the exchangors' funds not only by causing [BPETCO] to be the nominal custodian of the funds for purposes of the tax law but also by himself using the funds in his options trading. To have the benefit of the 1031 exchange, the exchangors had to relinquish control to the intermediary. The defendant's control of the property was obtained through the fraud of which he was convicted. He personally controlled the investment of the funds while in the Merrill Lynch and Paine Webber accounts. The funds were effectively in his custody, and that satisfied the "acquired" requirement in the definition of "proceeds."

Add:11-12. The court rejected Carpenter's Eighth Amendment argument on the ground that the forfeiture amount was the amount Carpenter had acquired through the

fraud of which he was convicted. Add:12.

Carpenter appealed from the forfeiture order, and this Court docketed this appeal separately from Carpenter's appeal in the underlying criminal case.[4] Carpenter also filed a motion for reconsideration of the forfeiture order in the district court, Doc.477, and this Court held this appeal in abeyance pending the district court's ruling on that motion, which was denied on February 20, 2019.[5]

## **Relevant Trial Evidence.**

Under 26 U.S.C. §1031, owners of investment properties can defer payment of capital gains tax on the sale of the property if the property is exchanged for another like-kind property, they designate a replacement property within 45 days, close on the new property within 180 days, and, in the interim, do not have control of, or access to, the proceeds of the sale. *See United States v. Carpenter*, 736 F.3d 619, 622 (1st Cir. 2013). "As a result, exchangors typically rely on 'qualified intermediaries' to

---

[4] The Court has since affirmed Carpenter's convictions. *United States v. Carpenter*, 781 F.3d 599, 606-07 (1st Cir. 2015). The Court did not consider the forfeiture issues in that appeal, as the parties agreed that the forfeiture appeal was not properly before the Court at that time. *Id.* at 623.

[5] That denial is not the subject of this appeal. In that same order, the district court also denied Carpenter's motion to vacate his conviction and sentence under 28 U.S.C. §2255, as well as other motions challenging his conviction. This Court has docketed Carpenter's appeal from that order as *Carpenter v. United States*, No. 19-1246. Carpenter is proceeding *pro se* with respect to that appeal.

hold and invest the funds until the exchange is completed." *Id.*

Carpenter, who headed Benistar, Ltd, the largest welfare benefit plan administrative firm in the country, App:391-92, 1526, and Martin Paley, who had been marketing Nationwide's §1031 intermediary services since 1995, formed Benistar Property Exchange Trust Co. ("BPETCO") in 1998 to provide §1031 intermediary services. App:1431-32. BPETCO was a subsidiary of Benistar. App:216. Paley was the President of BPETCO, and Carpenter was the Chairman. App:1432. Paley was in charge of marketing, and Carpenter was in charge of investing the exchangors' funds. App:1435-37, 1549. The fees charged by BPETCO for its services were split between BPETCO and Benistar, with BPETCO retaining 90% and Benistar receiving 10%, App:402, and the monies earned in excess of the interest that was promised to the exchangors was to be split 50-50 between BPETCO and Benistar. App:1480.

Once the exchangors sold their properties, the proceeds of the sales were sent to BPETCO to be held pending identification and purchase of replacement properties. App:1270. The exchangors' funds were held in escrow by BPETCO, first at Merrill Lynch and later at PaineWebber, in accounts in BPETCO's name. App:213-14, 548, 843, 1074, and clients could select either a 3% or 6% return on their funds. App:497, 548. Carpenter, on behalf of BPETCO as custodian of the funds, was the signatory

on the accounts. App:843. The exchangors could not be signatories on the accounts because the tax benefits conferred by §1031 were contingent on the funds' being in the control of a third party during the interim between sale and purchase. App:1630.

The escrow agreements with the exchangors stated that the accounts were "restricted to paying out funds only for a subsequent closing or to return funds to the original property owner." App:216. Under the escrow agreements, BPETCO was to place the exchangors' funds in an escrow custodial account in BPETCO's name, over which BPETCO was to have full investment control, and clients had a choice of either a 3% money market account or a 6% investment account. App:548. Exchangors also signed exchange agreements that provided that the "intermediary shall hold the net proceeds from the closing herein until such time as exchangor has located suitable like-kind property or properties in which to exchange." App:252. The exchange agreements also provided that the money received from the disposition of the property sold would be held either in a money market account paying 3% a year or in an investment account paying 6%. App:258, 336, 499. All of the exchangors at issue chose the 6% option. App:200, 259, 337, 437, 726, 1364-65, 1650, 1696.

The offenses of which Carpenter was convicted arose from the investment strategy that he employed with respect to the exchangors' funds in the BPETCO custodial accounts. While BPETCO's promotional materials led clients to believe that

8

their money would be safely invested, Carpenter instead followed an aggressive trading strategy that relied heavily on options trading. *See Carpenter*, 736 F.3d at 623-24. For most of BPETCO's existence, that strategy produced good results, until the 2000 market crash resulted in substantial losses in the BPETCO accounts. As this Court has described these events:

> Carpenter's trading strategy succeeded at first, from 1998 to 2000, and the additional gains beyond the promised 3% or 6% annualized return increased the company's, and his own, profit. During that time, [BPETCO's] clients were paid the amounts promised to them. But Carpenter's investments began to turn in the spring of 2000. From late March to late May 2000, Carpenter lost approximately one million dollars from [BPETCO's] Merrill Lynch trading account as various stocks fell significantly during the option periods. Carpenter's strategy ultimately failed completely when the NASDAQ stock market crashed in late 2000. By the end of September 2000, Carpenter had lost about four million dollars.

*Carpenter*, 736 F.3d at 624.

During the course of its existence, BPETCO successfully completed 119 of the 126 exchanges for which its services had been engaged. App:1952. The forfeiture order is predicated on the sum of the monies entrusted to BPETCO for the unsuccessful exchanges, which BPETCO was unable, because of the market losses, to return to the clients at the time the money was needed to complete their exchanges.[6]

---

[6] All of the affected clients ultimately recouped their money through civil actions and the fully-paid restitution ordered in this case. App:1938-43.

## SUMMARY OF ARGUMENT

I. The district court lacked subject-matter jurisdiction to enter the challenged forfeiture order. After judgment entered on March 4, 2014, and Carpenter filed his notice of appeal on March 17, 2014, the district court was "divested of authority to proceed with respect to any matter touching upon, or involved in, the appeal." *United States v. George*, 841 F.3d 55, 71 (1st Cir. 2016)(internal quotation marks omitted). That rule extends to the forfeiture order entered here, even though the parties consented to the procedure followed by the district court. *See id.* at 71-72.

II. 18 U.S.C. §981(a)(1)(C) subjects to forfeiture "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to" a mail or wire fraud offense. Section 981(a)(2) provides two different definitions of "proceeds," depending upon the type of offense of which the defendant was convicted. Section 981(a)(2)(A), applicable to "cases involving illegal goods, illegal services, unlawful activities, and telemarketing and health care fraud schemes," defines "proceeds" as "property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense." Section 981(a)(2)(B)—the provision applicable here—is, by contrast, applicable to "lawful goods or lawful services that are sold or provided in an unlawful manner," and defines "proceeds" as

10

"the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services."

There are three crucial differences between §981(a)(2)(A) and §981(a)(2)(B). First, §981(a)(2)(A) is not limited to net gain, while §981(a)(2)(B) is so limited. Second, §981(a)(2)(B) omits the "directly or indirectly" language that is found in §981(a)(2)(A), evidencing a congressional intent to limit forfeiture under §981(a)(2)(B) to money directly acquired by the defendant. Third, instead of the verb "obtained" that Congress employed in §981(a)(2)(A), Congress substituted the verb "acquired" in §981(a)(2)(B). Because courts generally assume that, when Congress uses certain language in one part of a statute and different language in another, different meanings were intended, "acquired" must mean something different from "obtained." "Acquire" carries with it the connotation of ownership: something that one obtains *as one's own*. Thus, proceeds are forfeitable under §981(a)(2)(B) only to the extent that the defendant acquired profits for himself.

Carpenter did not "acquire" the monies he has been ordered to forfeit. The monies at issue were entrusted to BPETCO by the exchangors to be held in trust for them pending completion of their exchanges. Carpenter had no power or authority to assert control over the exchangors' funds for his personal gain or any entitlement to them. The funds at issue were not BPETCO corporate funds but instead remained

11

the property of the exchangors which Carpenter invested to produce the rate of return they had chosen. That money was not taken by BPETCO as profits but was instead held for the benefit of the exchangors. Carpenter could not and did not acquire any of those funds for his personal benefit. Even if Carpenter controlled how BPETCO invested the exchangors' funds, he did not "acquire" the exchangors' funds held in BPETCO's §1031 investment accounts within the meaning of §981(a)(2)(B). Those funds are not, accordingly, subject to forfeiture under §981(a)(2)(B).

Alternately, and at minimum, §981(a)(2)(B) is grievously ambiguous as to whether criminal forfeiture may be imposed upon a defendant like Carpenter who never personally acquired any portion of the funds which he has been ordered to forfeit. The rule of lenity commands that genuine ambiguities affecting a criminal statute's scope be resolved in the defendant's favor. If "acquired" in §981(a)(2)(B) is not interpreted to require direct, personal acquisition, then its meaning is grievously ambiguous, and interpreting the statute otherwise would increase the financial penalty imposed on Carpenter from zero to more than $14 million. The rule of lenity dictates that the ambiguity be resolved in Carpenter's favor.

III.  Because the forfeiture imposed in this case constituted punishment for the offenses of which Carpenter was convicted, it is subject to the Excessive Fines Clause of the Eighth Amendment. A criminal forfeiture is unconstitutional under the

Excessive Fines Clause if it is grossly disproportional to the gravity of the defendant's offense. To determine whether a forfeiture is grossly disproportional, this Court looks to three factors (1) whether the defendant falls into the class of persons at whom the criminal statute was principally directed; (2) other penalties authorized by the legislature (or the Sentencing Commission); and (3) the harm caused by the defendant. Each of these factors weighs in favor of a finding that the forfeiture ordered here is grossly disproportionate in violation of the Excessive Fines Clause.

As to the first factor, Carpenter's conduct falls well outside the heartland of mail and wire fraud because he did not personally acquire any of the exchangors' funds which were lost because of his investment strategy and negative market forces and because it was not his intent to take the exchangors' funds for his own benefit but instead to invest them in order to return them to the exchangors with interest and with a profit for his company—a profit that would only be realized if his investments were successful. As for the second factor, which this Court has described as the most important one, the forfeiture imposed here was almost three times the maximum fine that could have been imposed under the applicable statute and *140* times the maximum fine provided by the guidelines, which this Court has indicated is a more accurate gauge of disproportionality than the statutory fine range. As for the third factor, BPETCO was a legitimate business which successfully completed 119

straight exchanges; it failed to do so only as to a final seven. While, with respect to those last exchanges, the exchangors were unable to complete their exchanges, they have, through civil litigation, more than recouped their losses.

IV.  In *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved  beyond a reasonable doubt."  Years later, in *Southern Union Co. v. United States*, 567 U.S. 343 (2012), the Court extended *Apprendi*'s construction of the Sixth Amendment to criminal fines, drawing on the principles enunciated in *Blakely v. Washington*, 542 U.S. 296 (2004), that the "'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. *Id.* at 303. Accordingly, the Sixth Amendment does not permit a sentencing court to "inflic[t] punishment that the jury's verdict alone does not allow." *Id.* at 304. A year later, the Supreme Court extended *Apprendi* again, this time to facts that increase the mandatory minimum sentence. In *Alleyne v. United States*, 570 U.S. 99 (2013), the Court termed it "indisputable" that "a fact triggering a mandatory minimum alters the prescribed range of sentences to which a criminal defendant is exposed." *Id.* at 112.

The reasoning of *Apprendi*, *Southern Union*, and *Alleyne* supports the

14

conclusion that the Sixth Amendment requires a jury finding as to the amount of money the defendant acquired through the illegal transactions resulting in the forfeiture before a forfeiture order may be entered under §981(a)(2)(B). Carpenter acknowledges that the Supreme Court held in *Libretti v. United States*, 516 U.S. 29 (1995), that the Sixth Amendment does not require that forfeiture issues be tried to a jury and that this Court had said that it is bound by *Libretti* until it is overruled by the Supreme Court. However, the doctrinal underpinnings of *Libretti* have been thoroughly eroded by subsequent Supreme Court jurisprudence. *Libretti* is predicated on the now-outmoded dichotomy between elements of the offense and sentencing factors which *Apprendi*, *Southern Union*, and *Alleyne* have invalidated. In the post-*Apprendi/Southern Union/Alleyne* universe, many decisions which were formerly considered only "aspects of sentencing" now fall within the parameters of the Sixth Amendment jury trial right and must be submitted to the jury for its determination. Forfeiture under §981(a)(2)(B) is one of them.

V.    Should this Court conclude that forfeiture was properly ordered, the amount of the forfeiture should be reduced. Section 981(a)(2)(B) provides that "proceeds" means "the amount of money acquired through the illegal transactions resulting in the forfeiture, *less the direct costs incurred in providing the goods or services*" (emphasis added). That being the case, the amount of the forfeiture should

15

be reduced by the amounts of money returned to the exchangors, as those were part of the direct costs of providing BPETCO's services.

## ARGUMENT

The challenged forfeiture order should be vacated for a number of reasons. First, the district court lacked subject-matter jurisdiction to enter the forfeiture order that is the subject of this appeal. Second, if this Court concludes that the district court did have subject-matter jurisdiction to enter the forfeiture order, under 18 U.S.C. §981(a)(2)(B), the definition of proceeds applicable to this case, forfeiture may permissibly be ordered against Carpenter only to the extent that he "acquired [money] through the illegal transactions resulting in the forfeiture." Because Carpenter never personally acquired any of the exchangors' funds which were paid to BPETCO, there are no "proceeds" subject to forfeiture. Third, even assuming *arguendo* that forfeiture is authorized under §981(a)(2)(B), a $14 million forfeiture is grossly disproportionate and would thus violate the Excessive Fines Clause of the Eighth Amendment. Fourth, under the Sixth Amendment, the forfeiture issue could not be decided through judicial fact-finding but instead required a jury finding as to the amount of money that Carpenter "acquired through the illegal transactions resulting in the forfeiture."

16

## I.    THE    DISTRICT    COURT    LACKED    SUBJECT-MATTER JURISDICTION TO ENTER THE FORFEITURE ORDER.[7]

At the outset, even though he consented to the procedure followed by the

district court, Carpenter must address the question whether the district court had

subject-matter jurisdiction to enter the forfeiture order at issue in light of this Court's

decision in *United States v. George*, 841 F.3d 55 (1st Cir. 2016), a case decided two-

and-a-half years after the proceedings in this case.  At sentencing, the district court

expressed considerable skepticism on the issue of forfeiture, *see* pages 3-4, *supra*,

and, with the agreement of the parties, entered judgment on March 4, 2014, stating,

as to forfeiture, that "*[i]f* there are any proceeds, they are to be forfeited." Add:7

(emphasis added). Carpenter's notice of appeal from that judgment was filed on

March 17, 2014. App:39. Two months later, on May 23, 2014, while Carpenter's

appeal was pending in this Court, the district court  entered its Opinion and Order

regarding forfeiture.[8]

This Court considered very similar circumstances in *George*, in which the

district court entered a judgment that "did not contain any dispositive provision with

---

[7] This Court reviews the "district court's implicit conclusion that it possessed subject-matter jurisdiction to enter the forfeiture order . . . de novo." *United States v. George*, 841 F.3d 55, 70-71 (1st Cir. 2016).

[8] The judgment was never amended to include the forfeiture.

respect to forfeiture," but "note[d] that the court was deferring any decision on forfeiture 'with the consent of the parties.'" *Id.* at 70. The defendant filed his notice of appeal the following day. While that appeal was pending, the court entered an amended judgment that for the first time included an order of forfeiture. *Id.*

In assessing whether the district court had subject-matter jurisdiction to enter the amended judgment ordering forfeiture, this Court began with "the abecedarian principle that once a notice of appeal is filed, the district court is divested of 'authority to proceed with respect to any matter touching upon, or involved in, the appeal.'" *Id.* at 71, *quoting United States v. Brooks*, 145 F.3d 446, 455 (1st Cir. 1998). *See United States v. Maldonado-Rios*, 790 F.3d 62, 64 (1st Cir. 2015)("[A] docketed notice of appeal suspends the sentencing court's power to modify a defendant's sentence," *quoting United States v. Distasio*, 820 F.2d 20, 23 (1st Cir.1987)). Thus, at the moment the defendant filed his notice of appeal, "the district court was divested of jurisdiction regarding 'any matter touching upon, or involved in, the appeal,'" *id.*, a proscription that "extended to the court's attempt to introduce into the judgment, for the first time, a forfeiture order." *George*, 841 F.3d at 71. The defendant's notice of appeal divested the district court of jurisdiction because

> there was no forfeiture order included in the original judgment, merely an allusion to the possibility that forfeiture might be ordered at some unspecified future date. The district court made clear both at the disposition hearing and in

18

its written judgment that forfeiture remained an open, unresolved issue, and took no position as to whether forfeiture would be ordered at all.

*Id.* at 72.[9] These were precisely the circumstances here. The judgment merely said that proceeds, *if any*, would be subject to forfeiture, but left the question whether there would be any forfeiture at all open and unresolved.

While it is true that the parties consented to defer resolution of the forfeiture issue until after sentencing and judgment, *George* makes clear that such consent does not matter where subject-matter jurisdiction is concerned:

> The fact that the parties consented to deferral of the district court's consideration of the forfeiture issue does not alter the jurisdictional calculus. A federal court's lack of subject-matter jurisdiction cannot be repaired by consent of the parties.

*Id.* To validly enter the order it did, the district court could have "asked [this Court] to stay the pending appeal and remand in order to allow it to make that additional

---

[9] In reaching this conclusion, the Court distinguished its earlier decision in *United States v. Ferrario-Pozzi,* 368 F.3d 5 (1st Cir. 2004), on the ground that, in *Ferrario-Pozzi*, the original judgment provided for forfeiture of no less than $2 million. The Court held that the district court had jurisdiction to enter an amended judgment specifying a forfeiture of $3,700,000 because it was "an amendment of an existing order under Rule 32.2(e), and thus within the jurisdiction retained by the court," and forfeiture "was properly a part of the [initial] judgment." *George*, 841 F.3d at 71-72. *See United States v. Naphaeng*, 906 F.3d 173, 177 (1st Cir. 2018)("[W]e have concluded that a district court retains jurisdiction to modify *a previously existing forfeiture order* even after an appeal has been taken." (emphasis added)).

ruling," *id.* at 72, but it did not do so.

The district court lacked subject-matter jurisdiction to enter the forfeiture order, and that order should be vacated.

## II.    CARPENTER DID NOT "ACQUIRE" THE MONEY ORDERED TO BE FORFEITED AS REQUIRED UNDER §981(a)(2)(B).[10]

The monies which the district court identified as the forfeitable proceeds of the offense were monies entrusted to BPETCO by certain exchangors. Carpenter, however, never "acquired" any of the exchangors' money such as to render that sum forfeitable under 18 U.S.C. §981(a)(2)(B). None of that money came to Carpenter; it remained at all times the property of the exchangors. As §1031 funds, they were being held by BPETCO for return to the exchangors with the chosen accrual of interest. Carpenter had no right to acquire them for his personal use, nor did he ever do so. BPETCO's agreements with the exchangors required that BPETCO invest the money to produce the exchangors' chosen rate of return, and that is what Carpenter did. The offenses of which Carpenter was convicted involved omissions regarding how BPETCO would invest the money to generate the promised interest, not a fraud

---

[10] Where, as here, " a claim of error directed at a forfeiture order has been duly preserved," this Court "review[s] challenges to the ordering court's legal conclusions de novo and challenges to its factual findings for clear error." *United States v. George*, 886 F.3d 31, 35 (1st Cir. 2018).

20

through which Carpenter generated monies which inured to his personal benefit. Far from taking any of the exchangors' money for himself (or having the control of it required to do so), Carpenter injected into the BPETCO account more than $2,000,000 of his own money in the effort to stave off losses to the exchangors. App:1336. There were no forfeitable proceeds of Carpenter's offenses, as that term is defined in §981(a)(2)(B).

## A.    The Statutory Framework.

Section 981(a)(1)(C) subjects to forfeiture "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to" a mail or wire fraud offense.[11] That section "has a multiplicity of possible meanings depending on the nature of the offense of conviction." *United States v. George*, 886 F.3d 31, 39 (1st Cir. 2018). Section 981(a)(2) provides two different definitions of "proceeds," depending upon the type of offense of which the defendant was convicted. Section 981(a)(2)(A), applicable to "cases involving illegal goods, illegal services, unlawful activities, and telemarketing and health care fraud schemes," defines "proceeds" as "property of any kind obtained directly or indirectly, as the result of the commission

---

[11] Although §981 is a civil forfeiture statute, "it applies in criminal cases pursuant to 28 U.S.C. §2461" to offenses that are subject to civil forfeiture. *United States v. Cox*, 851 F.3d 113, 128 n.14 (1st Cir. 2017).

of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense." Section 981(a)(2)(B), by contrast, is applicable to "lawful goods or lawful services that are sold or provided in an unlawful manner," and defines "proceeds" as "the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services."

The differences between the two subsections are such that "the classification of an offense of conviction can have a profound effect on the amount that may be subject to forfeiture in a particular case." *George*, 886 F.3d at 39. Although, as this Court noted in *George*, there is "relatively sparse" caselaw examining the differences between the two provisions, *id.*, the facial differences between the subsections are stark. Section 981(a)(2)(A) is, by its express terms, not limited to net gain or profit and "captures proceeds directly *or indirectly* obtained through the offenses of conviction and authorizes the recoupment of the gross amount of those proceeds." *Id.* (emphasis added). In §981(a)(2)(B), by contrast, Congress omitted §981(a)(2)(A)'s language extending  forfeiture to gross proceeds, indicating an intent to limit forfeiture under §981(a)(2)(B) to net proceeds, *i.e.*, profit. "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and

22

purposely in the disparate inclusion or exclusion." *Dean v. United States*, 556 U.S. 568, 573 (2009), *quoting Russello v. United States*, 464 U.S. 16, 23 (1983). *See, e.g., In re Hart*, 328 F.3d 45, 49 (1st Cir. 2003)("[I]t is a general principle of statutory construction that when Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."). That principle applies equally to Congress' omission of "directly or indirectly" from §981(a)(2)(B). That omission evidences a congressional intent to limit forfeiture under §981(a)(2)(B) to direct proceeds, *i.e.*, money directly acquired by the defendant.[12]

Also important is Congress' use of "acquired" in subsection (B) in place of the word "obtained" that it employed in subsection (A). That difference must have meaning. *See, e.g., Sosa v. Alvarez-Machain*, 542 U.S. 692, 712 n.9 (2004)("[W]hen the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended."); *Hirt v. Equitable*

---

[12] In *George*, the Court noted that subsection (B) "does not explicitly render property forfeitable if that property is an indirect fruit of the crime." 886 F.3d at 35. Because the Court concluded that subsection (A) applied in that case, it had no occasion to further explore Congress' omission of indirect proceeds from subsection (B).

*Ret. Plan*, 533 F.3d 102, 108 (2d Cir. 2008)("When Congress uses particular language in one section of a statute and different language in another, we presume its word choice was intentional."); *S.E.C. v. McCarthy*, 322 F.3d 650, 656 (9th Cir. 2003)("It is a well-established canon of statutory interpretation that the use of different words or terms within a statute demonstrates that Congress intended to convey a different meaning for those words."); *Cunningham v. Scibana*, 259 F.3d 303, 308 (4th Cir. 2001)("Although the two terms are quite similar, we must assume that Congress made a deliberate choice to use different language," citing 2A Norman J. Singer, Statutes and Statutory Construction §46:06, at 194 (6th ed. 2000)("The use of different terms within related statutes generally implies that different meanings were intended."); *Persinger v. Islamic Republic of Iran*, 729 F.2d 835, 843 (D.C. Cir. 1984)("When Congress uses explicit language in one part of a statute to cover a particular situation and then uses different language in another part of the same statute, a strong inference arises that the two provisions do not mean the same thing."); *see also Russello*, 464 U.S. at 23 ("We refrain from concluding here that the differing language in the two subsections has the same meaning in each.").

Although "obtain" and "acquire" are often treated as synonymous, Congress' intentional selection of a different verb in subsection (B) must mean something. "Acquire" carries with it the connotation of ownership: something that one obtains

24

*as one's own. See, e.g., Helvering v. San Joaquin Fruit & Inv. Co.*, 297 U.S. 496, 499 (1936)("The word 'acquired' is not a term of art in the law of property but one in common use. The plain import of the word is 'obtained as one's own'."); *see also* Oxford Living Dictionaries (defining "acquire" as "Buy or obtain (an asset or object) for oneself"), available at https://en.oxforddictionaries.com/definition/acquire; dictionary.com (defining "acquire" as "to come into possession or ownership of; get as one's own"), available at https://www.dictionary.com/browse/acquire; Merriam-Webster Dictionary (defining "acquire" as "to get as one's own"), available at https://www.merriam-webster.com/dictionary/acquire. Because Carpenter in no sense "acquired" the exchangors' money for his own, the forfeiture order entered here was erroneous.[13]

---

[13] There does not appear to be any legislative history elucidating Congress' shift from "obtained" in §981(a)(2)(A) to "acquired" in §981(a)(2)(B). Section 981(a)(2) was added in 2000, as part of the Civil Asset Forfeiture Reform Act, P.L. 106-185 ("CAFRA"). Also as part of CAFRA, Congress overhauled the rules for assertion of innocent owner defenses in 18 U.S.C. §983, and twice referred to property interests "acquired" by the individual in defining "innocent owner." *See* §983(d)(3). Absent an ownership interest, there would be no innocent owner defense to assert, and "acquired" must be read in that context as a matter of personal ownership or acquisition. "It is a fundamental interpretive principle that identical words or terms used in different parts of the same act are intended to have the same meaning." *United States v. Nippon Paper Indus. Co.*, 109 F.3d 1, 4 (1st Cir. 1997). *See, e.g., Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 19 (2011)("Identical words used in different parts of a statute are presumed to have the same meaning absent contrary indication."); *Hernandez-Miranda v. Empresas Diaz Masso, Inc.*, 651 F.3d 167, 175 (1st Cir. 2011)("[U]nder normal rules of statutory

**B.     Carpenter Did Not "Acquire" the Monies He Has Been Ordered to Forfeit.**

Unlike restitution, which addresses the losses to the victims (and which Carpenter has paid), forfeiture "is a form of punishment designed to divest the criminal defendant of the profits of the illegal activity for which he has been convicted." *United States v. Ferrario-Pozzi*, 368 F.3d 5, 8 (1st Cir. 2004)(internal quotation marks omitted). *See, e.g., United States v. Joseph*, 743 F.3d 1350, 1354 (11th Cir. 2014)("While restitution seeks to make victims whole by reimbursing them for their losses, forfeiture is meant to punish the defendant by transferring his ill-gotten gains to the United States Department of Justice."); *United States v. Innarelli*, 524 F.3d 286, 293 n.7 (1st Cir. 2008)("[U]nlike forfeiture, the purpose of restitution is not to disgorge from the defendant the property he gained at the victim's expense."); *United States v. Webber*, 536 F.3d 584, 602-03 (7th Cir. 2008)("Restitution is remedial in nature, and its goal is to restore the victim's loss. . . . Forfeiture, in contrast, is punitive; it seeks to disgorge any profits that the offender realized from his illegal activity."). Section 981(a)(2)(B) does not permit punishing Carpenter to the tune of $14 million based on money that he never

---

construction, identical words used in different parts of the same act are intended to have the same meaning.").

"acquired" for himself.

Carpenter did not "acquire" the monies he has been ordered to forfeit. The monies at issue were entrusted to BPETCO by the exchangors to be held in trust for them pending completion of their exchanges. Carpenter had no power or authority to assert control over the exchangors' funds for his personal gain or any entitlement to them. The funds at issue were not BPETCO corporate funds but instead remained the property of the exchangors which Carpenter invested to produce the rate of return they had chosen. That money was not taken by BPETCO as profits but was instead held for the benefit of the exchangors. Carpenter could not and did not acquire any of those funds for his personal benefit. Even if Carpenter controlled how BPETCO invested the exchangors' funds, he did not "acquire" the exchangors' funds held in BPETCO's §1031 investment accounts within the meaning of §981(a)(2)(B). Those funds are not, accordingly, subject to forfeiture under §981(a)(2)(B).

In ordering the forfeiture, the district court relied on *United States v. Contorinis*, 692 F.3d 136 (2nd Cir. 2012), to conclude that, because Carpenter "exercised control of the exchangors' funds not only by causing [BPETCO] to be the nominal custodian of the funds for purposes of the tax law but also by himself using the funds in his options trading." App:11. Because the funds "were effectively in his custody," the district court concluded, Carpenter could be found to have "acquired"

27

the funds. Add:12. Section 981(a)(2)(B) does not, however, speak in terms of controlling money or having "nominal custody" of money or of "money used." It requires that the money have been acquired as profit from the offense. In *Contorinis*, the defendant was a portfolio manager for an investment fund who "made investment decisions but did not control disbursements of profits." *Id.* at 139. The forfeiture order, which required the defendant to forfeit the entirety of the fund's profits, was invalid, the Court reasoned, because it "include[d] funds to which appellant was never entitled," and the proceeds were "acquired" by the fund "over which appellant lack[ed] control." *Id.* at 146. The "control" of which *Contorinis* was speaking was not control over the funds invested but rather control over the distribution of *profits.* As the Second Circuit later explained: "Because the profits subject to the challenged forfeiture order were earned by and paid to the employer fund, not Contorinis, and because Contorinis did not control disbursement of the fund's profits, those total profits did not represent his own unlawful gain." *United States v. Torres*, 703 F.3d 194, 201-02 (2d Cir. 2012). *See United States v. Rouhani*, 598 Fed. App'x 626, 633 (11th Cir. 2015)("Because it seeks to penalize the defendant for his illegal activities, *in personam* forfeiture reaches only that property, or portion thereof, *owned by the defendant*;" reversing forfeiture order based on monies received by defendant's corporation (emphasis added)).

28

Here, there were no profits and hence no "ill-gotten gains" that Carpenter "acquired" or owned that can properly be subject to forfeiture under §981(a)(2)(B). Carpenter may have had control over the investment of the funds and the distribution of profits, but there were no profits from the funds entrusted to BPETCO by the affected exchangors and thus no profits subject to distribution at his instance. In investing the exchangors' funds, Carpenter was carrying on the business of BPETCO, not taking them for himself. The exchangors' funds, which never belonged to either BPETCO or Carpenter as their own, cannot be regarded as having been acquired by Carpenter within the meaning of §981(a)(2)(B). Carpenter could not have distributed the exchangors' funds that were held by BPETCO in trust for the exchangors to himself, nor did he ever do so. He did not, therefore, have "control" of the exchangors' funds as that concept was employed in *Contorinis*. "'Forfeiture' is a word generally associated with a person's losing an entitlement as a penalty for certain conduct," *Contorinis*, 692 F.3d at 146, and like the defendant in *Contorinis*, although for different reasons, Carpenter was never entitled to the exchangors' funds, nor did he "acquire" them.[14]

---

[14] Although not making the point explicitly, the district court appears to have equated Carpenter's investment of the exchangors' funds with dissipation of the proceeds, citing *United States v. Hall*, 434 F.3d 42 (1st Cir. 2006). Add:11 n.4. However, drawing such an equivalence ignores one critical factor: in cases which have entered money judgments notwithstanding the fact that the defendant had spent

*Honeycutt v. United States*, 137 S.Ct. 1626 (2017), with its focus on whether the defendant actually obtained the monies sought to be forfeit, is instructive in the present context. In *Honeycutt*, the Supreme Court considered whether the imposition of joint and several forfeiture liability was permitted under 21 U.S.C. §853. The Court held that it was not, and that '[f]orfeiture pursuant to §853(a)(1) is limited to property the defendant himself *actually acquired* as the result of the crime." *Id.* at 1635 (emphasis added). Section 853(a)(1), similarly to §§981(a)(1)(C), (a)(2)(A), requires the forfeiture of "any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of [the] violation." Although the issue here differs somewhat from that in *Honeycutt*, the principle remains the same: the

---

the proceeds, the defendant, unlike Carpenter, had first obtained the proceeds for himself. As the Seventh Circuit has explained:

> a racketeer who dissipates profits or proceeds of his racketeering activity on wine, women, and song has profited from organized crime to the same extent as if he had put the money in his bank account. *Every dollar that the racketeer derives from illicit activities and then spends on such items as food, entertainment, college tuition, and charity, is a dollar that should not have been available for him to spend for those purposes.* In order to truly separate the racketeer from his dishonest gains, therefore, the statute requires him to forfeit to the United States the total amount of the proceeds of his racketeering activity, regardless of whether the specific dollars received from that activity are still in his possession.

*United States v. Ginsburg*, 773 F.2d 798, 802 (7th Cir.1985)(en banc), *quoted in Hall*, 434 F.3d at 59 (emphasis added).

defendant must have actually acquired the monies he has been ordered to forfeit. *Honeycutt*, therefore, underscores the proposition that forfeiture cannot be ordered in this case because Carpenter did not "acquire" the exchangors' funds.

Also instructive are cases dealing with the receipt of proceeds by corporations over which the defendants exercise such a degree of control as to be considered the corporation's alter ego. Where the defendant has been found to have been the alter ego of a corporation, courts have regarded the attribution of the proceeds to the defendant personally as a case of *indirect* obtaining of the property. *See, e.g., United States v. Peters*, 257 F.R.D. 377, 384-85 (W.D.N.Y. 2009), *aff'd* 732 F.3d 93, 102-04 (2d Cir. 2013); *United States v. Perry*, 2014 WL 7499372, at *2 (E.D.Va. Dec. 22, 2014), *aff'd* 659 Fed. App'x (4th Cir. 2016); *see also United States v. McLaughlin*, 565 Fed. App'x 470, 475 (6th Cir. 2014)(reversing district court finding that defendant obtained funds indirectly as alter ego of corporation because there was insufficient "basis to impute the company's receipts to McLaughlin based on the theory that he benefitted indirectly from the company's incoming cash flow"). As discussed in Section II(A), *supra*, however, §981(a)(2)(B), unlike §981(a)(2)(A), makes no provision for forfeiture of "indirect" proceeds. Even assuming *arguendo* that BPETCO could be said to have "acquired" the exchangors' funds within the meaning of §981(a)(2)(B), even though it never acquired them as its own, attribution

31

of those funds to Carpenter for forfeiture purposes could be based only on his *indirect* acquisition, a forfeiture theory not available under §981(a)(2)(B).

There were no monies properly forfeitable under §981(a)(2)(B), and the forfeiture order entered by the district court should be vacated.

### C.    At Minimum, the Statute is Grievously Ambiguous, and the Rule of Lenity Should be Applied.

Alternately, and at minimum, §981(a)(2)(B) is grievously ambiguous as to whether criminal forfeiture may be imposed upon a defendant like Carpenter who never personally acquired any portion of the funds which he has been ordered to forfeit. The rule of lenity "commands that genuine ambiguities affecting a criminal statute's scope be resolved in the defendant's favor," *United States v. Bowen*, 127 F.3d 9, 13 (1st Cir. 1997), and "means that 'the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended.'" *Id.* at 14, *quoting Ladner v. United States*, 358 U.S. 169, 178 (1958).  If "acquired" in §981(a)(2)(B) is not interpreted to require direct, personal acquisition, then its meaning is grievously ambiguous, and interpreting the statute otherwise would increase the financial penalty imposed on Carpenter from zero to more than $14 million. The rule of lenity dictates that the ambiguity be resolved in Carpenter's

favor.

## III.    THE $14 MILLION FORFEITURE ORDER VIOLATES THE EXCESSIVE FINES CLAUSE OF THE EIGHTH AMENDMENT.[15]

"The Excessive Fines Clause limits the government's power to extract payments, whether in cash or in kind, 'as *punishment* for some offense.'" *Austin v. United States*, 509 U.S. 602, 609-10 (1993), *quoting Browning-Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265 (1989)(emphasis added by Court). The protection afforded by the Excessive Fines Clause "against excessive punitive economic sanctions . . . is . . . both fundamental to our scheme of ordered liberty and deeply rooted in this Nation's history and tradition." *Timbs v. Indiana*, 139 S.Ct. 682, 689 (2019)(internal quotation marks omitted). Forfeitures are subject to the Excessive Fines Clause "if they constitute punishment for an offense." *United States v. Heldeman*, 402 F.3d 220, 223 (1st Cir. 2005), *quoting United States v. Bajakajian*, 524 U.S. 321, 328 (1998). Where forfeiture is "imposed at the culmination of a criminal proceeding and requires conviction of an underlying felony," it constitutes punishment for the offense. *Heldeman*, 402 F.3d at 223, *quoting Bajakajian*, 534 U.S. at 328.  Thus, the forfeiture imposed in this case constitutes punishment imposed on

---

[15] This Court's "review of disproportionality is *de novo*, with due deference given to the district court's factual findings." *United States v. Heldeman*, 402 F.3d 220, 223 (1st Cir. 2005).

Carpenter for the offenses of which he was convicted.

"A criminal forfeiture is unconstitutional under the Excessive Fines Clause if it is 'grossly disproportional to the gravity of the defendant's offense.'" *United States v. Levesque*, 546 F.3d 78, 83 (1st Cir. 2008), *quoting Bajakajian*, 524 U.S. at 337. *See, e.g.*, *Heldeman*, 402 F.3d at 223. As long ago as the Magna Carta, the power of governments to impose monetary punishments was limited by the rule that "amercements (the medieval predecessors of fines) should be proportioned to the offense and . . . they should not deprive a wrongdoer of his livelihood." *Levesque*, 546 F.3d at 83-84, *quoting Bajakajian*, 524 U.S. at 335.  The district court found that the forfeiture amount ordered here was "exactly proportionate" to the amount Carpenter, "acting for his company," obtained. Add:12. As discussed in Section II, *supra*, however, the sums entrusted to BPETCO were not "acquired" by Carpenter, and there is no direct proportionality here between anything Carpenter "acquired" and the amount of the forfeiture. What there is, instead, is gross *dis*proportionality.

This Court has identified three factors that courts should consider in determining whether a forfeiture is grossly disproportional: "(1) whether the defendant falls into the class of persons at whom the criminal statute was principally directed; (2) other penalties authorized by the legislature (or the Sentencing Commission); and (3) the harm caused by the defendant." *Heldeman*, 402 F.3d at 223.

34

As to the first *Heldeman* factor, Carpenter's conduct falls well outside the heartland of mail and wire fraud because he did not personally acquire any of the exchangors' funds which were lost because of his investment strategy and negative market forces and because it was not his intent to take the exchangors' funds for his own benefit but instead to invest them in order to return them to the exchangors with interest and with a profit for his company—a profit that would only be realized if his investments were successful. He never intended to lose his clients' money. BPETCO did return the funds entrusted to it, plus the agreed-upon interest, to 119 of 126 clients. Carpenter never took for himself any funds from the seven exchangors whose funds comprise the forfeiture amount, but rather invested more than $2 million of his own money in the effort to prevent any losses to them. Carpenter's Guidelines sentencing range was only 51-63 months, SApp:40, and he was sentenced to a term of only 36 months. Add:3.

Moreover, under the unusual circumstances of this case, the Court should look not just to whether Carpenter falls within the class of persons at whom the mail and wire fraud statutes were principally directed but also to whether he falls within the class of person at whom §981(a)(2)(B) was principally directed. As discussed in Section II, *supra*, he is not, as he never at any time acquired any of the funds he has been ordered to forfeit.

The second *Heldeman* factor, which this Court has described as the most important one, *see United States v. Neto*, 2007 WL 5209427, at *1 (1st Cir. Jan. 6, 2007)("[T]he most important consideration is whether the forfeiture falls below the statutory or guidelines maximum."), also supports a finding of gross disproportionality. The maximum statutory fine for mail and wire fraud violations is $250,000 per count, for a total of $4,750,000. *See* 18 U.S.C. §3571(b)(3); SApp:41. The $14,053,715.52 forfeiture is almost *three times* the statutory maximum fine. But, as this Court has indicated, greater weight should be given to the maximum penalties provided by the Guidelines than those provided by statute. *See United States v. Beras*, 183 F.3d 22, 29 n.5 (1st Cir. 1999)(noting that *Bajakajian* "suggests that the maximum penalties provided under the Guidelines should be given greater weight than the statute because the guidelines take into account the culpability of the individual defendant"). The difference between the amount of the forfeiture order and the Guidelines fine range is staggering. When the top of the Guidelines fine range of $100,000 is considered, *see* SApp:41, the disproportionality becomes astronomical, as the forfeiture is *140 times* the highest fine called for by the Guidelines.[16]

---

[16] The $100,000 Guidelines maximum fine was imposed on Carpenter. Add:6.The government has argued, in support of the forfeiture, that the maximum fine is that provided in 18 U.S.C. §3571(d), which permits a fine of two times the amount of the loss to be imposed. App:2070. The government did not, however, object to the PSR's reliance on the fine provisions referenced in the text, *supra*. In

As for the harm caused by Carpenter's conduct, BPETCO was a legitimate business which successfully completed 119 exchanges; it failed to do so only as to a final seven. While, with respect to those last exchanges, the exchangors were unable to complete their exchanges, they have, through civil litigation, recouped their losses several times over. *See* note 6, *supra*.

The forfeiture ordered here was grossly disproportionate in violation of the Excessive Fines Clause and should be vacated.

## IV.  THE AMOUNT OF MONEY THAT CARPENTER "ACQUIRED" AS THE RESULT OF THE OFFENSES OF CONVICTION WAS REQUIRED TO BE FOUND BY A JURY RATHER THAN BEING THE SUBJECT OF JUDICIAL FACTFINDING.

The district court found "some appeal" in Carpenter's contention that, if a forfeiture penalty were to be imposed, the amount of that forfeiture had to be determined by the jury, not decided by the judge. Add:12. The court reasoned that, because district courts have no discretion to reduce the amount of the forfeiture, the

---

any event, the higher alternative statutory maximum fine provided in §3571(d) could not be imposed in this case, as there was no jury finding regarding the amount of the loss. *See, e.g., Southern Union Co. v. United States*, 567 U.S. 343, 347 (2012)(applying *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), to criminal fines); *United States v. Pfaff*, 619 F.3d 172, 174-75 (2d Cir. 2010)(alternative fine under §3571(d) could not be imposed in absence of jury finding as to loss).

forfeiture amount was "arguably the substantial equivalent of a mandatory minimum sentence, and thus governed by the *Alleyne* rule." Add:13. Despite the argument's "potential appeal," however, the court concluded that it was bound by the Supreme Court's decision in *Libretti v. United States*, 516 U.S. 29 (1995), that there is no Sixth Amendment right to have the forfeiture determination made by a jury. *Id.*

In *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Years later, in *Southern Union Co. v. United States*, 567 U.S. 343 (2012), the Court extended *Apprendi*'s construction of the Sixth Amendment to criminal fines, drawing on the principles enunciated in *Blakely v. Washington*, 542 U.S. 296 (2004), that the "'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. *Id.* at 303. Accordingly, the Sixth Amendment does not permit a sentencing court to "inflic[t] punishment that the jury's verdict alone does not allow." *Id.* at 304. In *Southern Union*, the applicable fine provision provided for fines of not more than $50,000 for each day of violation, and, notwithstanding that the jury's verdict established only one day's violation, the district court imposed a fine based on 762 days of violations. The Court concluded

38

that there was "no principled basis" for treating criminal fines differently from other

forms of punishment, 567 U.S. at 348, as fines, like sentences of imprisonment "are

penalties inflicted by the sovereign for the commission of offenses." *Id.* Moreover,

the Court reasoned,

> the amount of a fine, like the maximum term of imprisonment or eligibility for
> the death penalty, is often calculated by reference to particular facts.
> Sometimes, as here, the fact is the duration of a statutory violation; under other
> statutes it is the amount of the defendant's gain or the victim's loss, or some
> other factor. *In all such cases, requiring juries to find  beyond a reasonable
> doubt facts that determine the fine's maximum amount is necessary to
> implement* Apprendi*'s animating principle: the preservation of the jury's
> historic role as a bulwark between the State and the accused at trial for an
> alleged offense.*

*Id.* at 349-50 (emphasis added; internal quotation marks omitted).

A year later, the Supreme Court extended *Apprendi* again, this time to facts that

increase the mandatory minimum sentence. In *Alleyne v. United States*, 570 U.S. 99

(2013), the Court termed it "indisputable" that "a fact triggering a mandatory

minimum alters the prescribed range of sentences to which a criminal defendant is

exposed." *Id.* at 112. Accordingly,  *Apprendi* applies because any "fact increasing

either end of the [legally prescribed] range produces a new penalty." *Id.*

The district court here believed that "these three cases"—*Apprendi*, *Southern

Union*, and *Alleyne*—"may support the proposition that facts supporting a criminal

39

forfeiture order must be found by a jury." Add:13. Carpenter contends here, as he contended below, that these three cases *do* support—and even compel—the conclusion that facts necessary to the imposition of a forfeiture order under §981(B)(2)(B) must be found by a jury. As addressed in Section III, *supra*, a forfeiture order entered in a criminal case is, like a fine, indisputably punishment for the offense of conviction. There is, moreover, no principled basis on which to differentiate forfeiture under §981(a)(2)(B) from the types of fines the Supreme Court described in *Southern Union*. If the facts that determine the maximum amount of the fine that can be imposed based on the defendant's gain or the victim's loss must be found by a jury beyond a reasonable doubt, then so too must the facts that determine the amount that the defendant "acquired" as the result of the offenses of conviction. Because forfeiture under §981(a)(1)(C) is mandatory, *see* 28 U.S.C. §2461(c)("If the defendant is convicted of the offense giving rise to the forfeiture, the court *shall order* the forfeiture of the property as part of the sentence in the criminal case . . . ." (emphasis added)); *United States v. Newman*, 659 F.3d 1235, 1240 (9th Cir. 2011)("The mandatory nature of ['shall order' in §2461(c)] is clear: When the government has met the requirements for criminal forfeiture, the district court must impose criminal forfeiture, subject only to statutory and constitutional limits."), the amount of money that the defendant "acquired through the illegal transactions

40

resulting in the forfeiture" becomes the mandatory minimum sentence. The judicial finding of the "acquired" amount effectively raises the mandatory minimum sentence of zero forfeiture (if no money was "acquired") to the amount found by the court. It is thus subject to *Alleyne*, as it is a "fact that changes the applicable minimum or maximum sentence." *United States v. Walker-Couvertier*, 860 F.3d 1, 17 (1st Cir. 2017). *See, e.g., Ring v. Arizona*, 536 U.S. 584, 602 (2002)("If a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact—no matter how the State labels it—must be found by a jury beyond a reasonable doubt."); *United States v. Munyenyezi*, 781 F.3d 532, 544 (1st Cir. 2015)("[A] judge can find facts for sentencing purposes by a preponderance of the evidence, *so long as those facts do not affect either the statutory minimum . . . or the statutory maximum*." (emphasis added)).

While the Supreme Court held in *Libretti v. United States*, 516 U.S. 29 (1995), that the Sixth Amendment does not require that forfeiture issues be tried to a jury, *Libretti* is predicated on the now-outmoded dichotomy between elements of the offense and sentencing issues which *Apprendi*, *Southern Union*, and *Alleyne* have invalidated. *See id.* at 49 ("our analysis of the nature of criminal forfeiture as an aspect of sentencing compels the conclusion that the right to a jury verdict on forfeitability does not fall within the Sixth Amendment's constitutional protection").

41

In the post-*Apprendi/Southern Union/Alleyne* universe, of course, many decisions which were formerly considered only "aspects of sentencing" now fall within the parameters of the Sixth Amendment jury trial right and must be submitted to the jury for its determination.

The doctrinal underpinnings of *Libretto* have been thoroughly eroded by subsequent Supreme Court jurisprudence. *Libretti* relied on three cases for its statement that "[o]ur cases have made abundantly clear that a defendant does not enjoy a constitutional right to a jury determination as to the appropriate sentence to be imposed." *Id.* at 47. First, it relied on the statement in *McMillan v. Pennsylvania*, 477 U.S. 79, 93 (1986), that "there is no Sixth Amendment right to jury sentencing, even where the sentence turns on specific findings of fact." 516 U.S. at 49. As we now know, subsequent cases have made the opposite "abundantly clear": after *Apprendi/Southern Union/Alleyne*, there are many circumstances in which the Sixth Amendment *does* guarantee a jury finding of the specific facts that trigger the applicable sentence or sentencing range. *Alleyne* itself calls the continuing validity of *McMillan* into serious doubt. *See* 570 U.S. at 105-07.

As support for the statement from *McMillan* on which *Libretti* relied, *McMillan* cited *Spaziano v. Florida*, 468 U.S. 447 (1984), on which *Libretti* also relied. *Spaziano*'s holding that there is no Sixth Amendment right to jury findings of facts

necessary for the imposition of the death penalty was, however, overruled by *Hurst v. Florida*, 136 S.Ct. 616 (2016). Accordingly, two of the three legs supporting *Libretti*'s holding that the Sixth Amendment categorically does not apply to forfeiture determinations have been swept away by subsequent decisions. The third statement on which *Libretti* relied—that from *Cabana v. Bullock*, 474 U.S. 376, 385 (1986), that "[t]he decision whether a particular sentence is appropriate in any given case is not one that we have ever required to be made by a jury" (for which proposition *Cabana* also relied on the now-overruled *Spaziano*)—simply has no relevance in the present context. Determining the amount of the forfeiture penalty for the offense does not involve judicial discretion in choosing the "appropriate" sanction from a range of options—something that *Alleyne* made clear its decision did not affect—but instead judicial factfinding that determines the mandatory sentence to be imposed.[17]

*Libretti* has not, to be sure, been overruled by the Supreme Court, but its reasoning is no longer viable in the wake of *Apprendi/Southern Union/Alleyne* and related cases. Carpenter acknowledges, however, that this Court has stated that it is

---

[17] The Supreme Court has only once cited *Libretti* in the 24 years since it was decided, and that was in an entirely different context. *See Padilla v. Kentucky*, 559 U.S. 356, 370 (2010).

bound by *Libretti* even in the wake of *Apprendi* and *United States v. Booker,* 543 U.S. 220 (2005). *See, e.g., United States v. Saccoccia*, 564 F.3d 502, 507 (1st Cir. 2009); *United States v. Ortiz-Cintron*, 461 F.3d 78, 82 (1st Cir. 2006).[18] Other courts have reached the same conclusion even post-*Southern Union*. *See, e.g., United States v. Simpson*, 741 F.3d 539, 559-60 (5th Cir. 2014); *United States v. Sigillito*, 759 F.3d 913, 935 (8th Cir. 2104); *United States v. Phillips*, 704 F.3d 754, 769-70 (9th Cir. 2012); *United States v. Day*, 700 F.3d 713, 732-33 (4th Cir. 2012).  Given the wholesale erosion of *Libretti*'s foundations, it is likely that the Supreme Court will expressly abandon *Libretti*'s  reasoning. Its holding should fall as well.

The other reason courts have given for not applying *Apprendi/Southern Union/Alleyne* to forfeiture determinations is that forfeiture statutes, purportedly unlike the fine statute at issue in *Southern Union*, do not have a statutory maximum and constitute indeterminate, as opposed to determinate, sentencing. *See, e.g., Sigillito*, 759 F.3d at 935-36; *Simpson*, 741 F.3d at 560*; Phillips*, 704 F.3d at 770-71;

---

[18] In *Saccoccia*, this Court expressed its belief that it was unlikely that *Booker* would lead the Supreme Court to reconsider *Libretti* because "*Booker*'s primary concern was with imprisonment being set or expanded . . . ." 564 F.3d at 507. However, *Southern Union* makes it clear that the Sixth Amendment jury trial right extends beyond physical punishment to include monetary penalties.

*Day*, 700 F.3d at 732-33.[19] Forfeiture under §981(a)(2)(B) cannot, however, be properly characterized as indeterminate, at least in its traditional usage as a sentencing scheme in which courts retain substantial discretion to select a sentence within the broad range specified by the legislature as punishment for the offense. Quite the contrary: determination of the amount that the defendant "acquired" is precisely determinate sentencing; forfeiture *must* be ordered in that amount. In that respect, forfeiture presents a *more* compelling case for requiring a jury finding than did the fine at issue in *Southern Union.* In *Southern Union*, the statute permitted fines of up to $50,000 per day, but, like §981(a)(2)(B), did not specify an upward maximum, other than that the fine amount was bounded by the number of days the violation lasted. It was that latter determination that *Southern Union* required to be made by the jury because the jury verdict did not demonstrate a jury finding of more than a single day's violation, and "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Blakely*, 542 U.S. at 303 (emphasis in original). Unlike the §981(a)(2)(B) forfeiture context, in which forfeiture of the

---

[19] Other courts had employed similar reasoning in cases declining to extend *Apprendi* to forfeiture before *Southern Union* and *Alleyne. See, e.g., United States v. Fruchter*, 411 F.3d 377, 383 (2d Cir. 2005); *see also United States v. Milkiewicz*, 470 F.3d 390, 404 (1st Cir. 2006)(restitution).

"acquired" amount is mandatory, the finding of the number of days of the violation in *Southern Union* simply sets the upper limit of the fine but leaves the court free to impose a fine of anywhere from zero to $50,000 times the number of days found. *See* 42 U.S.C. §6928(d). *Libretti* leaves courts free to find that facts that set the mandatory minimum punishment and thus to "inflic[t] punishment that the jury's verdict alone does not allow." *Southern Union*, 567 U.S. at 348, *quoting Blakely*, 542 U.S. at 304. *Libretti* cannot be squared with *Apprendi*, *Southern Union*, and *Alleyne*. The Sixth Amendment requires that the determination of "the amount of money acquired through the illegal transactions resulting in the forfeiture," §981(a)(2)(B), be made by the jury, and the forfeiture order in this case cannot stand.

## V. EVEN IF CARPENTER COULD BE FOUND TO HAVE "ACQUIRED" THE EXCHANGORS' FUNDS FOR PURPOSES OF APPLYING §981(a)(2)(B), THE FORFEITURE AMOUNT SHOULD BE REDUCED BY THE AMOUNT OF MONEY RETURNED TO THE EXCHANGORS.

Should this Court conclude that forfeiture was properly ordered, the amount of the forfeiture should be reduced. Section 981(a)(2)(B) provides that "proceeds" means "the amount of money acquired through the illegal transactions resulting in the forfeiture, *less the direct costs incurred in providing the goods or services*" (emphasis added). Carpenter argued at sentencing that the monies returned to the exchangors were part of the direct costs of providing BPETCO's services and should, therefore,

46

be deducted from the forfeiture amount sought by the government. App:1951-52.

The district court found that Carpenter had not satisfied his burden of proof on this issue. Add:11. This was error. Carpenter contended at sentencing that the amount of the forfeiture that could be ordered, if forfeiture could properly be ordered at all, had to be reduced to reflect the amount of money returned to the exchangors. *See* App:1951-52; SApp:10, 25.[20] BPETCO's business was holding and investing exchangors' funds and then returning those funds to them, plus the chosen rate of return, when they were ready to complete their exchanges. The monies returned to the exchangors were a direct cost of BPETCO's business.  *See United States v. Hollnagel*, 2013 WL 5348317, at *4-*5 (N.D.Ill. Sept. 24, 2013)(where defendants "promised that they would pay the investors distributions and return their capital," and did so, the monies returned to investors was a deductible cost). Thus, the district court had all the proof it needed to reduce the amount of the forfeiture by BPETCO's direct costs, as required under §981(a)(2)(B).

---

[20] In his motion for reconsideration of the forfeiture order, Carpenter provided the district court with additional evidence showing amounts returned to exchangors that he contended should reduce the forfeiture amount to zero. *See* Doc. 477. The denial of that motion is not now before the Court but is encompassed within Carpenter's pro se notice of appeal in *Carpenter v. United States*, No. 19-1246. *See* note 5, *supra.*

## CONCLUSION

For all the foregoing reasons, the forfeiture order entered in this case should be vacated. At minimum, it should be reduced by the amount of the monies returned to the exchangors.

**/s/ Kimberly Homan**

Kimberly Homan

20 Park Plaza, Suite 1000

Boston, Massachusetts 02116

(617) 227-8616 (Telephone)

(617) 338-9538 (Fax)

homanlaw@aol.com

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

_____

No. 14-1641

_____

UNITED STATES,
Appellee

v.

DANIEL E. CARPENTER,
Defendant-Appellant

_____

**CERTIFICATE OF COMPLIANCE WITH TYPEFACE AND LENGTH
LIMITATIONS**

_____

This brief has been prepared using:

> 14 point, proportionally spaced, serif typeface (such as CG Times or Times New Roman). Specify software name and version, typeface name, and point size below:
>
> Wordperfect Office X8, 14-point Times New Roman

EXCLUSIVE of the corporate disclosure statement; table of contents; table of citations; addendum; and the certificate of service, appellant's briefs contain, in total:

> 11,802 words.

I understand that a material misrepresentation can result in the Court striking the brief or imposing sanctions. If the Court so directs, I will provide a copy of the word or line printout.

**/s/ Kimberly Homan**

Kimberly Homan

49

# CERTIFICATE OF SERVICE

I, Kimberly Homan, hereby certify that on this 3rd day of April, 2019, this Brief was filed with the Court through its CM/ECF system, thus effectuating service on all parties to this appeal, and one copy of the Appendix and one copy of the Sealed Appendix was served, by mail, on Vijay Shanker, Deputy Chief, Appellate Division, United States Department of Justice, 950 Pennsylvania Ave., NW, Room 1264, Washington, DC 20530.

**/s/ Kimberly Homan**
Kimberly Homan

# ADDENDUM

## <u>TABLE OF CONTENTS</u>

<u>**ADDENDUM**</u>

<u>**Page**</u>

Judgment Dated March 4, 2014, Dkt. 438 .................................1

Opinion and Order, Dkt. 471 .....................................................9

✎AO 245B(05-MA)　　　(Rev. 06/05) Judgment in a Criminal Case
　　　　　　　　　　　Sheet 1 - D. Massachusetts - 10/05

# UNITED STATES DISTRICT COURT
### District of Massachusetts

| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
|---|---|
| **V.** | |
| **DANIEL CARPENTER** | Case Number: **1:  04 CR 10029   - 001 - GAO** |
| | USM Number: |
| | MARTIN WEINBERG, ESQUIRE |

Defendant's Attorney

☑ Additional documents attached

☐ Correction of Sentence for Clerical Mistake (Fed. R. Crim. P.36)

**THE DEFENDANT:**

☐ pleaded guilty to count(s)

☐ pleaded nolo contendere to count(s)
which was accepted by the court.

☑ was found guilty on count(s)　1s-19s  ( Date of Verdict:  6/18/08)
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:　　　　　　　　Additional Counts - See continuation page ☑

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC Sec. 1343 | Wire Fraud | 09/08/00 | 1s ,2s |
| 18 USC Sec. 1343 | Wire Fraud | 08/08/00 | 3s |
| 18 USC Sec. 1343 | Wire Fraud | 08/09/00 | 4s |
| 18 USC Sec. 1343 | Wire Fraud | 11/22/00 | 5s |
| 18 USC Sec. 1343 | Wire Fraud | 09/14/00 | 6s |

The defendant is sentenced as provided in pages 2 through　　12　　of this judgment. The sentence is imposed pursuant to
the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☑ Count(s)　　1-19　　　　　　　☐ is　☑ are  dismissed on the motion of the United States.

　　　It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence,
or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution,
the defendant must notify the court and United States attorney of material changes in economic circumstances.

02/26/14

Date of Imposition of Judgment

Signature of Judge

The Honorable George A. O'Toole

Judge, U.S. District Court

Name and Title of Judge

3/4/14

Date

1

AO 245B(05-MA)    (Rev. 06/05) Judgment in a Criminal Case
Sheet 1A - D. Massachusetts - 10/05

Judgment—Page    2    of    12

DEFENDANT:    **DANIEL CARPENTER**
CASE NUMBER: **1: 04 CR 10029   - 001 - GAO**

## ADDITIONAL COUNTS OF CONVICTION

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC Sec. 1343 | Wire Fraud | 08/16/00 | 7s |
| 18 USC Sec. 1343 | Wire Fraud | 12/01/00 | 8s,9s |
| 18 USC Sec. 1343 | Wire Fraud | 12/01/00 | 10s,11s |
| 18 USC Sec 1343 | Wire Fraud | 11/13/00 | 12s |
| 18 USC Sec. 1343 | Wire Fraud | 11/16/00 | 13s,14s |
| 18 USC Sec. 1341 | Mail Fraud | 11/08/00 | 15s |
| 18 USC Sec. 1341 | Mail Fraud | 11/21/00 | 16s |
| 18 USC Sec. 1341 | Mail Fraud | 09/14/00 | 17s |
| 18 USC Sec. 1341 | Mail Fraud | 09/20/00 | 18s |
| 18 USC Sec. 1341 | Mail Fraud | 12/14/00 | 19s |

AO 245B(05-MA)    (Rev. 06/05) Judgment in a Criminal Case
Sheet 2 - D. Massachusetts - 10/05

DEFENDANT:    **DANIEL CARPENTER** ☒    Judgment — Page ___3___ of ___12___

CASE NUMBER: **1: 04 CR 10029   - 001 - GAO**

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:    36    month(s)

on each of counts 1s-19s, all to be served concurrently with each other.

☑ The court makes the following recommendations to the Bureau of Prisons:

The court recommends to the Bureau of Prisons that they take into consideration the defendant's family circumstances when designating a facility.

☐ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

☐ at _____ ☐ a.m.    ☐ p.m.    on _____ .

☐ as notified by the United States Marshal.

☑ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☑ before 2 p.m. on    04/25/14 _____ .

☑ as notified by the United States Marshal.

☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

a_____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

3

AO 245B(05-MA)    (Rev. 06/05) Judgment in a Criminal Case
Sheet 3 - D. Massachusetts - 10/05

Judgment—Page ___4___ of ___12___

DEFENDANT: **DANIEL CARPENTER** ✚
CASE NUMBER: **1: 04 CR 10029  - 001 - GAO**

## SUPERVISED RELEASE

☑ See continuation page

Upon release from imprisonment, the defendant shall be on supervised release for a term of :    36    month(s)

on each of counts 1s-19s all to be served concurrently with each other.

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, not to exceed 104 tests per year, as directed by the probation officer.

☑ The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

☑ The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

☑ The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

☐ The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer. (Check, if applicable.)

☐ The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;

2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4) the defendant shall support his or her dependents and meet other family responsibilities;

5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9) the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

4

AO 245B(05-MA)    (Rev. 06/05) Judgment in a Criminal Case
                  Sheet 4A - Continuation Page - Supervised Release/Probation -10/05

DEFENDANT:    **DANIEL CARPENTER**

CASE NUMBER: **1: 04 CR 10029   - 001 - GAO**

Judgment—Page ___5___ of ___12___

## ADDITIONAL☑ SUPERVISED RELEASE☐ PROBATION TERMS

The defendant is to pay the balance of the restitution according to a schedule set by probation, or, if necessary, by the court after a hearing.

Defendant is prohibited from incurring new credit charges or opening additional lines of credit without the approval of the Probation Office while any financial obligations remain outstanding.

The defendant is to provide the probation Office access to any requested financial information, which may be shared with the Financial Litigation Unit of the US Attorney's Office.

**Continuation of Conditions of ☐ Supervised Release ☐ Probation**

AO 245B(05-MA)     (Rev. 06/05) Judgment in a Criminal Case
                   Sheet 5 - D. Massachusetts - 10/05

DEFENDANT:        **DANIEL CARPENTER**                          Judgment –– Page ___6___ of ___

CASE NUMBER: **1: 04 CR 10029   - 001 - GAO**

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|               | **Assessment**   | **Fine**              | **Restitution**      |
|---------------|------------------|-----------------------|----------------------|
| **TOTALS**  $ | $1,900.00      | $    $100,000.00    | $    $310,033.96   |

☐   The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case* (AO 245C)  will  be  entered after such determination.

☐   The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee**        | **Total Loss***  | **Restitution Ordered** | **Priority or Percentage** |
|--------------------------|------------------|-------------------------|----------------------------|
| Brian Fitzgerald         |                  | $65,701.94              |                            |
| Estate of Byron Darling  |                  | $244,332.02             |                            |

☐ See Continuation Page

| **TOTALS** | $ _____ $0.00 | $_____ $310,033.96 |
|------------|-------------------|-----------------------|

☐   Restitution amount ordered pursuant to plea agreement $ _____

☑   The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐   The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐   the interest requirement is waived for the      ☐ fine   ☐ restitution.

    ☐   the interest requirement for the      ☐ fine   ☐ restitution is modified as follows:

\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

6

AO 245B(05-MA)    (Rev. 06/05) Judgment in a Criminal Case
Sheet 6 - D. Massachusetts - 10/05

DEFENDANT: **DANIEL CARPENTER**

CASE NUMBER: **1: 04 CR 10029  - 001 - GAO**

Judgment — Page ___7___ of ___12___

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A ☐  Lump sum payment of $ _____ due immediately, balance due

☐ not later than _____ , or
☐ in accordance ☐ C, ☐ D, ☐ E, or ☐ F below; or

B ☐  Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

C ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
_____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
_____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
term of supervision; or

E ☐  Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from
imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F ☒  Special instructions regarding the payment of criminal monetary penalties:

Payment of the fine and restitution is to begin immediately according to the requirements of the federal Bureau
of Prisons' Inmate Financial Responsibility Program while the defendant is incarcerated and according to a
court-ordered repayment schedule during the term of supervised release.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

☐ See Continuation Page

Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☒  The defendant shall forfeit the defendant's interest in the following property to the United States:

If there are any proceeds, they are to be forfeited. The court to scheduled a hearing to determine the amount to be forfeited.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

7

AO 245B(05-MA)     (Rev. 06/05) Judgment in a Criminal Case
                   Sheet 5A - D. Massachusetts - 10/05

DEFENDANT:       **DANIEL CARPENTER**                       Judgment—Page  8  of  12

CASE NUMBER:     **1: 04  CR  10029  - 001  - GAO**

## ADDITIONAL TERMS FOR CRIMINAL MONETARY PENALTIES

The defendant shall notify the United States Attorney for this district within 30 days of any change of mailing or residence address that occurs while any portion of the restitution remains unpaid.

Any payments made, that is not payment in full, shall be divided proportionately among Brian Fitzgerald and Byron Darling until their restitution is fully satisfied.

The restitution shall be paid immediately or according to a payment scheduled set down by probation, or, if necessary, by the court after a hearing. Payments shall be made to the Clerk, U.S. district Court for transfer to the named victims.

The assessment fee is due forthwith.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 04-10029-GAO

UNITED STATES OF AMERICA

v.

DANIEL E. CARPENTER,
Defendant.

OPINION AND ORDER
May 23, 2014

O'TOOLE, D.J.

The defendant was convicted by a jury of nineteen counts of mail and wire fraud.[1] The Superseding Indictment included a forfeiture count, and prior to sentencing the government moved for forfeiture of property in the sum of $14,053,715.52 pursuant to 18 U.S.C. § 981 and 28 U.S.C. § 2461(c). The defendant was sentenced to incarceration and ordered to pay restitution and a fine. At the sentencing hearing, I requested further briefing from the parties on the forfeiture issue. This Opinion and Order now addresses that issue.

In addition, the defendant has moved for bail pending appeal and to stay the payment of the fine and restitution, matters also resolved by this Order.

**I.** **Forfeiture**

After a defendant is convicted of mail and/or wire fraud, the sentencing court may order the forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds

---

[1] The history of this prosecution and a summary of the evidence supporting the conviction are detailed in United States v. Carpenter, 736 F.3d 619 (1st Cir. 2013).

Case 1:04-cr-10029-GAO    Document 471    Filed 05/23/14    Page 2 of 9

traceable to [the] violation." 18 U.S.C. § 981(a)(1)(C).[2] There are two possible definitions of

"proceeds" that may be applicable in this case. Section 981A(a)(2)(A) provides:

> In cases involving illegal goods, illegal services, unlawful activities, and telemarketing and health care fraud schemes, the term "proceeds" means property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense.

Alternatively, section 981(a)(2)(B) provides:

> In cases involving lawful goods or lawful services that are sold or provided in an illegal manner, the term "proceeds" means the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services. The claimant shall have the burden of proof with respect to the issue of direct costs. The direct costs shall not include any part of the overhead expenses of the entity providing the goods or services, or any part of the income taxes paid by the entity.

18 U.S.C. § 981(a)(2)(B).

Mail and wire fraud might arguably be called "unlawful activities" and thus fall within

the former definition, but that section immediately follows the words "unlawful activities" with

two specific categories of "fraud schemes." That would be unnecessary, of course, if the generic

term "unlawful activities" had been intended to be broad enough to encompass fraud schemes.

The latter definition seems more apt in the circumstances of this case, which broadly described

involved the "lawful services" of a Section 1031 intermediary being "provided in an illegal

manner," that is, by means of mail and wire fraud. I conclude, therefore, that for purposes of this

case, "'proceeds' means the amount of money acquired through the illegal transactions resulting

---

[2] Section 981(a)(1)(C) allows a court to order forfeiture for "any offense constituting 'specified unlawful activity' [ ]as defined in [18 U.S.C. § ] 1956(c)(7)." Section 1956(c)(7)(A) incorporates "any act or activity constituting an offense listed in [18 U.S.C. § ] 1961(1)." And § 1961(1)(D) lists mail fraud and wire fraud. While § 981(a)(1)(C) is a civil forfeiture provision, it has been integrated into criminal proceedings via 28 U.S.C. § 2461(c). This circuitous statutory mechanism authorizes a court to order forfeiture in mail fraud and wire fraud proceedings. United States v. Contorinis, 692 F.3d 136, 145 n.2 (2d Cir. 2012).

in the forfeiture, less the direct costs incurred in providing the . . . services." Id. Consequently, I agree with the government that the "amount of money acquired through the illegal transactions" is the amount an exchangor committed to the custody of Benistar, as alleged in the respective counts[3] (and, per the jury verdict, proved at trial). Any reduction to account for "direct costs" of the legal activity would have to be proved by the defendant, id., and no evidence has been offered in that respect.

The defendant argues that forfeiture is not appropriate because the exchangors' funds were not "acquired" by him within the meaning of the forfeiture statute. Rather, he asserts, the funds were only held temporarily by Benistar for the benefit of the exchangors in a Merrill Lynch or Paine Webber account. Accordingly, he says, he personally never acquired the funds and they are thus not forfeitable as "proceeds" of his unlawful activity.[4]

The argument is unconvincing. For property to be "acquired" by the defendant in the necessary sense, it "must have, at some point, been under the defendant's control." United States v. Contorinis, 692 F.3d 136, 147 (2d Cir. 2012). It is clear in this case that the defendant exercised control of the exchangors' funds not only by causing Benistar to be the nominal custodian of the funds for purposes of the tax law but also by himself using the funds in his options trading. To have the benefit of the 1031 exchange, the exchangors had to relinquish control to the intermediary. The defendant's control of the property was obtained through the fraud of which he was convicted. He personally controlled the investment of the funds while in

---

[3] The government seeks forfeiture under Counts One, Two, Five, Six, and Eight through Nineteen, the amounts obtained by Benistar under these counts totaled $14,053,715.52.

[4] It is well established that dissipating the funds would not be a reason to not order forfeiture. See United States v. Hall, 434 F.3d 42, 59 (1st Cir. 2006).

3

the Merrill Lynch and Paine Webber accounts. The funds were effectively in his custody, and

that satisfied the "acquired" requirement in the definition of "proceeds."

The defendant next argues that the amount of forfeiture sought by the government would

violate the Eighth Amendment's excessive fines clause.

> A forfeiture will violate the Eighth Amendment's prohibition only if it is grossly
> disproportional to the gravity of the defendant's offense The case law invites us to
> consider as pertinent factors (1) whether the defendant falls into the class of
> persons at whom the criminal statute was principally directed; (2) other penalties
> authorized by the legislature (or the Sentencing Commission); and (3) the harm
> caused by the defendant.

United States v. Heldiman, 402 F.3d 220, 223 (1st Cir. 2005) (internal quotation marks and

citations omitted).

The defendant first contends that the amount of forfeiture is disproportionate to his

criminal conduct and that he, as an individual, never personally acquired the money. But, as

discussed above, that is not the case. According to the verdict, he, acting for his company,

obtained the exchangors' money by fraud. The forfeiture amount is exactly proportionate to the

amount thus "acquired" by reason of his criminal conduct.

Second, the defendant claims that the forfeiture amount would deprive him of his

livelihood. The argument is made in gross and without particulars, and is thus properly rejected.

See United States v. Aguasvivas-Castillo, 668 F.3d 7, 16 (1st Cir. 2012) (upholding a $20

million forfeiture order where defendant put forth no facts to support proposition that amount

would deprive him of his livelihood).

The defendant has not shown a violation of the Eighth Amendment's proscription.

Lastly, the defendant argues that the amount of his criminal forfeiture must be determined

by a jury rather than the Court. In light of recent developments in the law involving sentencing

this argument has some appeal. In Apprendi v. New Jersey, 530 U.S. 446 (2000) the Supreme

4

Court held that any fact, other than prior conviction, that increases a criminal penalty beyond the statutory maximum must be decided by a jury. In <u>Southern Union Co. v. United States</u>, 132 S. Ct. 2344 (2012), the Supreme Court applied the <u>Apprendi</u> rule to the imposition of criminal fines. Recently, in <u>Alleyne v. United States</u>, 133 S. Ct. 2151 (2013), the Supreme Court held that any fact that increases the mandatory minimum sentence must be submitted to a jury. Taken together, these three cases may support the proposition that facts supporting a criminal forfeiture order must be found by a jury. Since district courts have no discretion to reduce forfeiture, <u>see United States v. Phillips</u>, 704 F.3d 754, 769 (9th Cir. 2012), the statute requires to be forfeited whatever amount the court finds to be forfeitable, making that amount arguably the substantial equivalent of a minimum mandatory punishment, and thus governed by the <u>Alleyne</u> rule.

Nonetheless, notwithstanding the potential appeal of the defendant's argument, it runs directly contrary to existing Supreme Court precedent. In <u>Libretti v. United States</u>, 516 U.S. 29, 48–49 (1995), the Court expressly held that there is no Sixth Amendment right to a jury in a criminal forfeiture proceeding. This Court remains bound by that precedent. <u>See Rodriguez de Quijas v. Shearson/Am. Express, Inc.</u>, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."). As the law stands, the defendant has no jury trial right on the issue of forfeiture.

For the reasons stated herein, the government's Motion for Forfeiture (dkt. no. 433) is GRANTED.

## II.   Bail / Stay Pending Appeal

The defendant has moved for bail pending appeal and for an order staying the imposed fine and order of restitution. Motions for bail pending appeal are governed by 18 U.S.C. § 3143(b):

> (1) . . .  [T]he judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal . . . be detained, unless the judicial officer finds—
>
> > (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
> >
> > (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
> >
> > > (i) reversal,
> > >
> > > (ii) an order for a new trial,
> > >
> > > (iii) a sentence that does not include a term of imprisonment, or
> > >
> > > (iv) a reduced sentence to a term of imprisonment less than . . . the expected duration of the appeal process.
>
> If the judicial officer makes such findings, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c) of this title. . .

Under the statute, detention is the default setting, but it can be avoided if the court finds the enumerated conditions that warrant an exception to the norm. The First Circuit has made clear that the Bail Reform Act of 1984 creates

> no presumption in favor of release pending appeal; on the contrary, even when the conviction does not involve a crime of violence or drug offense, detention (following conviction and sentencing) is mandatory unless the judicial officer finds *inter alia* 'that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in' a reversal, new trial, or reduced term of imprisonment that would expire during the expected duration of the appeal process.

United States v. Colon-Munoz, 292 F.3d 18, 20 (1st Cir. 2002) (quoting 18 U.S.C. § 3143(b)(1)).

A defendant seeking the benefit of the exception has the burden of establishing the factual predicate for the exception. See Morison v. United States, 486 U.S. 1306, 1306–07 (1988) (Rehnquist, Circuit Justice). See also Fed. R. Crim. P. 46(c).

I find that the defendant is unable to carry his burden under the statute. As to the finding required under § 3143(b)(1)(A), the defendant has shown through the course of this case that he is not a flight risk. However, he has not shown by clear and convincing evidence that he does not pose a danger to the safety of the community. Viewing only its text, the statute itself could be understood to mean that "safety" is to be considered only with respect to possible physical harm to persons, but courts have held that the term can be understood to refer to the prevention of pecuniary or economic harm as well. See United States v. Reynolds, 956 F.2d 192 (9th Cir. 1992); United States v. Madoff, 586 F. Supp .2d 240, 252 (S.D.N.Y. 2009); United States v. Jinwright, 2010 WL 2926084 at *2 (W.D.N.C., July 23, 2010). The defendant was recently indicted in Connecticut for mail and wire fraud offenses, the same category of offenses as he was convicted of in this case. That indictment alleges acts committed through 2010. Additionally, in a civil case in the Southern District of New York, the district judge issued a written opinion detailing her conclusions that the defendant had engaged in fraudulent acts involving a life insurance policy. At the very least, those matters prevent a conclusion "by clear and convincing evidence" that the defendant poses no risk of safety to the community.

The defendant has also failed to persuade me that he meets the criteria of § 3143(b)(1)(B) – that his appeal presents one or more substantial issues which, if decided favorably to him, would likely result in reversal, a new trial, or a favorable adjustment of his sentence. See United States v. Bayko, 774 F.2d 516, 522-23 (1st Cir. 1985). The defendant identifies issues he will

present on appeal, all of which have, of course, been previously addressed here: violation of the Speedy Trial Act as to both trial and sentencing; constructive amendment of the indictment or prejudicial variance; insufficiency of the evidence; and governmental reliance on perjured testimony. (The Court of Appeals has already rejected at least the last argument. United States v. Carpenter, 736 F.3d 619, 631 (1st Cir. 2013).)

I have carefully reviewed and discussed each issue when it was presented and resolved at this level. I have twice rejected the defendant's argument regarding the sufficiency of the evidence. United States v. Carpenter, 405 F. Supp. 2d 85, 93-96 (D. Mass. 2005); United States v. Carpenter, 808 F. Supp. 2d 366, 376-80 (D. Mass. 2011). I have also considered and rejected his argument about a variance or constructive amendment of the indictment. 405 F. Supp. 2d at 92. I have also previously discussed why he has not shown a violation of his right to a speedy trial. United States v. Carpenter, 542 F. Supp. 2d 183 (D. Mass. 2008); Opinion and Order (Dkt. No. 431) (Feb. 21, 2014). For the reasons stated in those prior orders, I do not believe that any of the issues he proposes to appeal present a "close" question in the necessary sense. See Bayko, 774 F.2d at 523 (defining "close" as where "there is some question that very well could be decided the other way").

As to the motion to stay the fine and restitution, that motion is likewise denied. I agree with the government that the defendant's course of conduct in this case and the more recent cases in other jurisdiction referenced above creates a risk of the dissipation of the defendant's assets that cannot be ignored.

**III.**     **Conclusion**

For the reasons stated herein, the government's Motion for Forfeiture (dkt. no. 433) is

GRANTED. The defendant's Motions for Bail Pending Appeal (dkt. no. 452) and to Stay the

Fine and Restitution (dkt. no. 458) are DENIED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge
