UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

_____

No. 14-1641
_____

UNITED STATES,
Appellee

v.

DANIEL E. CARPENTER,
Defendant-Appellant

_____

On Appeal from an Opinion and Order of the United States District Court for
the District of Massachusetts
_____

PETITION FOR REHEARING AND REHEARING EN BANC
_____

Kimberly Homan
20 Park Plaza, Suite 1000
Boston, Massachusetts 02116
(617) 448-2812
homanlaw@aol.com

**TABLE OF CONTENTS**

RULE 35(b)(1)(A) STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

I.   THE PANEL ERRONEOUSLY CONSTRUED THE
     MEANING OF "ACQUIRED" IN 18 U.S.C. §981(a)(2)(B) . . . .   2

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . .   12

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

# TABLE OF AUTHORITIES

**Cases**

*Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617 (1989) . .     4

*Cunningham v. Scibana*, 259 F.3d 303 (4th Cir. 2001) . . . . . . . . . . . . .     5

*Hernandez-Miranda v. Empresas Diaz Masso, Inc.*, 651 F.3d 167
    (1st Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     6

*Hirt v. Equitable Ret. Plan*, 533 F.3d 102 (2d Cir. 2008) . . . . . . . . . . . .     5

*Honeycutt v. United States*, 137 S.Ct. 1626 (2017) . . . . . . . . . . . . . . . .     7

*Huddleston v. United States*, 415 U.S. 814 (1974) . . . . . . . . . . . . . . . .     8

*Kaley v. United States*, 571 U.S. 320 (2014) . . . . . . . . . . . . . . . . . . . . .     4

*Kasten v. Saint-Gobain Performance Plastics Corp.*,
    563 U.S. 1 (2011) . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . .     6

*McNeill v. United States*, 563 U.S. 816 (2011) . . . . . . . . . . . . . . . . . . .     8

*National Ass'n of Home Builders v. Defenders of Wildlife*,
    551 U.S. 644(2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     8

*Persinger v. Islamic Republic of Iran*, 729 F.2d 835 (D.C. Cir. 1984) . .     5-6

*Russello v. United States*, 464 U.S. 16 (1983) . . . . . . . . . . . . . . . . . . . .     6

*S.E.C. v. McCarthy*, 322 F.3d 650 (9th Cir. 2003) . . . . . . . . . . . . . . . . .     5

*Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004) . . . . . . . . . . . . . . . . . . .     5

*United States v. Balsiger*, 910 F.3d 942 (7th Cir. 2018) . . . . . . . . . . . . .     7

*United States v. Carpenter*, 941 F.3d 1 (1st Cir. 2019) . . . . . . . . . . . . . . 1, 2, 4, 8

*United States v. Contorinis*, 692 F.3d 136 (2nd Cir. 2012) . . . . . . . . . . . 1, 3, 7, 9

*United States v. Mahaffy*, 693 F.3d 113 (2d Cir. 2012) . . . . . . . . . . . . . .   4, 7

*United States v. Nacchio*, 573 F.3d 1062 (10th Cir. 2009) . . . . . . . . . . .   6

*United States v. Nippon Paper Indus. Co.*, 109 F.3d 1 (1st Cir. 1997) . .   6

*United States v. Torres*, 703 F.3d 194 (2d Cir. 2012) . . . . . . . . . . . . . . .   4

*Yates v. United States*, 135 S. Ct. 1074 (2015) . . . . . . . . . . . . . . . . . . . .   9

## **Statutes**

18 U.S.C. §981(a)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   *passim*

18 U.S.C. §981(a)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   *passim*

18 U.S.C. §983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

21 U.S.C. §853 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4, 7

## **Other Authorities**

2A Norman J. Singer, Statutes and Statutory Construction §46:06
    (6th ed. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

**RULE 35(b)(1)(A) STATEMENT**

This petition presents a question of grave importance: the scope of forfeiture that Congress intended under 18 U.S.C. §981(a)(2)(B). At stake is the potential forfeiture to the government of millions and millions of dollars to which it is not entitled under §981(a)(2)(B). This is an issue that affects not just Carpenter but many other defendants whose unlawful activities—in providing "lawful goods or lawful services that are sold or provided in an unlawful manner"—are governed by the definition of proceeds set forth in §981(a)(2)(B): "the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services."[1]

The panel opinion extends the reach of §981(a)(2)(B) to "property" that "was at some point under the defendant's control." *United States v. Carpenter*, 941 F.3d 1, 9 (1st Cir. 2019). That holding conflicts with the Second Circuit's treatment of the issue in *United States v. Contorinis*, 692 F.3d 136 (2nd Cir. 2012), in which the Court tied forfeitability under §981(a)(2)(B) to control over *profits* from the unlawful transaction, of which there were none in this case. It is also inconsistent with

---

[1] This definition of proceeds contrasts markedly with the definition provided in §981(a)(2)(A) for cases involving wholly unlawful activity:"property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense."

Congress' shift in language from subsection (2)(A) to subsection (2)(B). The effect of the panel decision is to largely eliminate Congress' carefully crafted distinction between (2)(A) forfeitures and (2)(B) forfeitures. Control over property may suffice under (2)(A), but it does not under (2)(B). If control over property were to suffice, then gross proceeds would always be forfeitable under (2)(B), a result Congress plainly did not intend.

Carpenter respectfully requests that this Court review this important issue *en banc* or, alternatively, that the panel reconsider its decision on this issue.

## I.   THE PANEL ERRONEOUSLY CONSTRUED THE MEANING OF "ACQUIRED" IN 18 U.S.C. §981(a)(2)(B).

In holding that the "acquired" standard of §981(a)(2)(B) is satisfied "where the property was at some point under the defendant's control," *United States v. Carpenter*, 941 F.3d 1, 9 (1st Cir. 2019), the panel largely eliminated Congress' carefully drawn distinctions between proceeds forfeitable under §981(a)(2)(A) in cases involving wholly unlawful activity and those forfeitable under §981(a)(2)(B) in cases such as this one that involve "lawful services that are sold or provided in an unlawful manner." While the former subsection calls for forfeiture of all property obtained directly or indirectly from the commission of the offense and is expressly not limited to net profit, the latter is limited to the monetary profits derived from the

2

unlawful transactions resulting in the forfeiture. The plain fact of the matter is that *there were no profits here*. Indeed, the panel recognized as much in its statement that Carpenter "could have distributed profits above the 3% or 6% owed to the exchangors, *if there had been any profits*." *Id.* at 10 n.7 (emphasis added).

The panel made this statement in the course of explaining why the Second Circuit's decision in *United States v. Contorinis*, 692 F.3d 136 (2nd Cir. 2012), did "not apply," *id.* at 10, to Carpenter. The panel, however, misperceived the import and meaning of *Contorinis*. Section 981(a)(2)(B) does not speak in terms of controlling property. Instead, it requires that the money have been acquired as profit from the offense. In *Contorinis*, the defendant was a portfolio manager for an investment fund who "made investment decisions but did not control disbursements of profits." *Id.* at 139. The forfeiture order, which required the defendant to forfeit the entirety of the fund's profits, was invalid, the Court reasoned, because it "include[d] funds to which appellant was never entitled," and the profits were "acquired" by the fund "over which appellant lack[ed] control." *Id.* at 146. The "control" of which *Contorinis* was speaking was not control over the funds invested but rather control over the distribution of *profits*. Indeed, Contorinis, like Carpenter, controlled investors' property insofar as he decided how it would be invested, but that did not suffice for imposition of forfeiture liability. As the Second Circuit later explained: "Because the

3

profits subject to the challenged forfeiture order were earned by and paid to the employer fund, not Contorinis, and *because Contorinis did not control disbursement of the fund's profits*, those total profits did not represent his own unlawful gain." *United States v. Torres*, 703 F.3d 194, 201-02 (2d Cir. 2012)(emphasis added). *See, e.g., United States v. Mahaffy*, 693 F.3d 113, 138 (2d Cir. 2012)("[T]he proper measure of forfeiture for each Broker Defendant is his net, not gross, gain (that is, the gross commissions paid to him less the significant portion of those commissions that went to his employer) under § 981(a)(2)(B).").

The panel rejected Carpenter's *Contorinis*-based argument on the ground that "[f]orfeiture orders go beyond the disgorgement of profits." *Carpenter*, 941 F.3d at 10. That may be true as to drug forfeitures under 21 U.S.C. §853, such as were at issue in the cases on which the panel relied, *Kaley v. United States*, 571 U.S. 320, 323 (2014), and *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 630 (1989), but Congress made the decision to limit forfeitable proceeds under §981(a)(2)(B) to profits."[2] Under that subsection, therefore, it is not control of property that matters but rather ownership or control of *profits* from the unlawful transactions.

---

[2] *Caplin & Drysdale*, on which *Kaley* drew, was decided before Congress enacted the binary definition of "proceeds" in §981(a)(2) as part of CAFRA in 2000.

Support for this conclusion is found in Congress' shift from "property . . . obtained" in §981(a)(2)(A) to "money acquired" in §981(a)(2)(B). The panel opinion fails to grapple with what Congress intended when it chose to employ a different verb in §981(a)(2)(B) than it had in §981(a)(2)(A), *i.e.*, how is "acquire" different from "obtain"? Instead, it essentially treated the two verbs as synonymous, even in the face of the long-standing canon of statutory construction that "when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 712 n.9 (2004). *See, e.g., Hirt v. Equitable Ret. Plan*, 533 F.3d 102, 108 (2d Cir. 2008)("When Congress uses particular language in one section of a statute and different language in another, we presume its word choice was intentional."); *S.E.C. v. McCarthy*, 322 F.3d 650, 656 (9th Cir. 2003)("It is a well-established canon of statutory interpretation that the use of different words or terms within a statute demonstrates that Congress intended to convey a different meaning for those words."); *Cunningham v. Scibana*, 259 F.3d 303, 308 (4th Cir. 2001)("Although the two terms are quite similar, we must assume that Congress made a deliberate choice to use different language," citing 2A Norman J. Singer, Statutes and Statutory Construction §46:06, at 194 (6th ed. 2000)("The use of different terms within related statutes generally implies that different meanings were intended."); *Persinger v.*

*Islamic Republic of Iran*, 729 F.2d 835, 843 (D.C. Cir. 1984)("When Congress uses explicit language in one part of a statute to cover a particular situation and then uses different language in another part of the same statute, a strong inference arises that the two provisions do not mean the same thing."); *see also Russello v. United States*, 464 U.S. 16, 23 (1983)("We refrain from concluding here that the differing language in the two subsections has the same meaning in each.").[3]

Because both subsections were enacted at the same time, by the same Congress, as part of the same legislation, the choice of a different verb must have meaning. *See, e.g., United States v. Nacchio*, 573 F.3d 1062, 1088-89 (10th Cir. 2009)("Sections 981(a)(2)(A) and 981(a)(2)(B) should be read together, and both

---

[3] There does not appear to be any legislative history elucidating Congress' shift from "obtained" in §981(a)(2)(A) to "acquired" in §981(a)(2)(B). Section 981(a)(2) was added in 2000, as part of the Civil Asset Forfeiture Reform Act, P.L. 106-185 ("CAFRA"). Also as part of CAFRA, Congress overhauled the rules for assertion of innocent owner defenses in 18 U.S.C. §983, and twice referred to property interests "acquired" by the individual in defining "innocent owner." *See* §983(d)(3). Absent an ownership interest, there would be no innocent owner defense to assert, and "acquired" must be read in that context as a matter of personal ownership or acquisition. "It is a fundamental interpretive principle that identical words or terms used in different parts of the same act are intended to have the same meaning." *United States v. Nippon Paper Indus. Co.*, 109 F.3d 1, 4 (1st Cir. 1997). *See, e.g., Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 19 (2011)("Identical words used in different parts of a statute are presumed to have the same meaning absent contrary indication."); *Hernandez-Miranda v. Empresas Diaz Masso, Inc.*, 651 F.3d 167, 175 (1st Cir. 2011)("[U]nder normal rules of statutory construction, identical words used in different parts of the same act are intended to have the same meaning.").

sections must have meaning"); *United States v. Balsiger*, 910 F.3d 942, 957 (7th Cir. 2018)(noting the different results required "given the differences in language employed in subparts (A) and (B) of §981(a)(2)"); *United States v. Mahaffy*, 693 F.3d 113, 137 (2d Cir. 2012)(noting that "[t]he government's reading renders §981(a)(2)(B) essentially meaningless"). "Acquire" carries with it the connotation of ownership: something that one obtains *as one's own*. Such a meaning is embodied in the reasoning of *Contorinis*, in which it was the investment firm that acquired the profits and which had the power to decide how those profits were to be distributed; the profits belonged to the firm, and the defendant was entitled only to that share of the profits to which he was contractually entitled. Because he had no ability to acquire more of the firm's profits than the amount of money to which he was entitled, he "acquired" only that share of the profits that were paid to him.[4]

---

[4] Contrary to the panel opinion, *Honeycutt v. United States*, 137 S.Ct. 1626 (2017), with its focus on whether the defendant actually obtained the monies sought to be forfeit, is instructive in the present context. In *Honeycutt*, the Supreme Court considered whether the imposition of joint and several forfeiture liability was permitted under 21 U.S.C. §853. The Court held that it was not, and that '[f]orfeiture pursuant to §853(a)(1) is limited to property the defendant himself *actually acquired* as the result of the crime." *Id.* at 1635 (emphasis added). Section 853(a)(1), similarly to §§981(a)(1)(C), (a)(2)(A), requires the forfeiture of "any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of [the] violation." Although the issue here differs somewhat from that in *Honeycutt*, the principle remains the same: the defendant must have actually acquired the monies he has been ordered to forfeit. *Honeycutt*, therefore, underscores the proposition that forfeiture cannot be ordered in this case because Carpenter did not "acquire" the

The panel opinion speaks of the "plain meaning" of "acquire," but all except one of the dictionary definitions on which it relies include "obtain" in the definition of "acquire," essentially conflating the two. *See Carpenter*, 941 F.3d at 8-9. Given Congress' choice to use "acquire" instead of "obtain" in §981(a)(2)(B), it cannot be said, on the basis of the cited definitions, that the meaning of "acquire" as it is used in §981(a)(2)(B) is "plain." Nor, contrary to the panel opinion, does *Huddleston v. United States*, 415 U.S. 814 (1974), advance the inquiry. The Court was not confronted in *Huddleston*, as here, with congressional choice of a different verb than it had used in the preceding subsection. In concluding that "acquisition" was not limited to ownership under the firearms statute at issue, the *Huddleston* Court analyzed the relationship of "acquisition" to other language in the statute and the statutory scheme as a whole, finding that it evidenced a congressional intent to apply the statute to all forms of transfers of firearms. That analysis was consistent with the "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *National Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 666 (2007). *See, e.g., McNeill v. United States*, 563 U.S. 816, 819 (2011)(in construing statutes,

---

exchangors' funds.

courts should look to "the language itself [and] the specific context in which that language is used"). The same word, in a different context, may well have a different meaning. *See Yates v. United States*, 135 S. Ct. 1074, 1082 (2015)("In law as in life, . . . the same words, placed in different contexts, sometimes mean different things."). While a broader definition of "acquisition" may be appropriate in the context of expansive firearms legislation, it is not so in the context of a statutory subsection in which Congress was prescribing a more limited definition of forfeitable proceeds than the one that preceded it.

Under *Contorinis*, which Carpenter contends applied the correct analysis, there must be (1) profits from the unlawful transactions (2) that directly accrued to the defendant or that he had the power to control. While Carpenter did have control over the distribution of profits, the availability of forfeiture under §981(a)(2)(B) in this case founders on the first requirement: there were no profits and hence no "ill-gotten gains" that Carpenter "acquired" that can properly be subject to forfeiture under §981(a)(2)(B). Carpenter may have had control over the investment of the funds and the distribution of profits, but there were no profits from the funds entrusted to BPETCO by the affected exchangors and thus no profits subject to distribution at his instance. In investing the exchangors' funds, Carpenter was carrying on the business of BPETCO, not taking them for himself. The exchangors' funds, which never

9

belonged to either BPETCO or Carpenter as their own, cannot be regarded as having been acquired by Carpenter within the meaning of §981(a)(2)(B). Carpenter could not have distributed the exchangors' funds that were held by BPETCO in trust for the exchangors to himself, nor did he ever do so. He did not, therefore, have "control" of the exchangors' funds as that concept was employed in *Contorinis*.

Carpenter did not "acquire" the monies he has been ordered to forfeit. The monies at issue were entrusted to BPETCO by the exchangors to be held in trust for them pending completion of their exchanges. Carpenter had no power or authority to assert control over the exchangors' funds for his personal gain or any entitlement to them. The funds at issue were not BPETCO corporate funds but instead remained the property of the exchangors which Carpenter invested to produce the rate of return they had chosen. That money was not taken by BPETCO as profits but was instead held for the benefit of the exchangors. Carpenter could not and did not acquire any of those funds for his personal benefit. Even if Carpenter controlled how BPETCO invested the exchangors' funds, he did not "acquire" the exchangors' funds held in BPETCO's §1031 investment accounts within the meaning of §981(a)(2)(B). Those funds are not, accordingly, subject to forfeiture under §981(a)(2)(B).

Carpenter has been ordered to forfeit more than $14 million, a result that Congress did not intend when it enacted §981(a)(2)(B) and limited forfeiture in cases

involving "lawful services that are sold or provided in an unlawful manner" to the profits "acquired through the illegal transactions resulting in the forfeiture." Carpenter respectfully requests *en banc* review of this important issue, which will affect many others besides Carpenter, or, at minimum, requests that the panel reconsider its definition of forfeitable proceeds under §981(a)(2)(B).

## CONCLUSION

For all the foregoing reasons, the Court should grant rehearing *en banc* or, at minimum, panel rehearing.

    Respectfully submitted,

    **/s/ Kimberly Homan**
    Kimberly Homan
    20 Park Plaza, Suite 1000
    Boston, Massachusetts 02116
    (617) 448-2812
    homanlaw@aol.com

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

_____

No. 14-1641

_____

UNITED STATES,
Appellee

v.

DANIEL E. CARPENTER,
Defendant-Appellant

_____

**CERTIFICATE OF COMPLIANCE WITH TYPEFACE AND LENGTH LIMITATIONS**

_____

This brief has been prepared using:
  14 point, proportionally spaced, serif typeface (such as CG Times or Times New Roman). Specify software name and version, typeface name, and point size below:
  <u>Wordperfect Office X8, 14-point Times New Roman</u>

EXCLUSIVE of the corporate disclosure statement; table of contents; table of citations; addendum; and the certificate of service, appellant's Petition for Rehearing contains, in total:

  2,815 words.

I understand that a material misrepresentation can result in the Court striking the brief or imposing sanctions. If the Court so directs, I will provide a copy of the word or line printout.

**/s/ Kimberly Homan**
Kimberly Homan

## CERTIFICATE OF SERVICE

      I, Kimberly Homan, hereby certify that on this 15th day of December, 2019, this Petition for Rehearing was filed with the Court through its CM/ECF system, thus effectuating service on all parties to this appeal.

**/s/ Kimberly Homan**
Kimberly Homan
